## 62941. GRANT v. THE STATE.

QUILLIAN, Chief Judge.
Franklin Delano Grant appeals his conviction of the offense of rape. *Held:*
1. The first enumeration of error contends the defendant "was

denied his right of confrontation of witnesses, his right to impeach ... and the right to present his theory of defense because of the trial court's ruling preventing any evidence of prior sexual activity being presented." Counsel for the defendant was cross-examining the complaining witness and asked her if it was true that she told her mother "the person that raped [her] gave [her] gonorrhea." She replied that it was true. Counsel then asked: "Isn't it true that at the time you were raped you had gonorrhea?" The state objected and was sustained. The court instructed counsel that this was improper questioning. Counsel for the defendant admitted: "I'm familiar with the law, 38-202.1, which prohibits any mention of a victim's prior sexual activities except to prove consent." However, counsel argued he was not using such questioning to show "prior sexual conduct on the part of the victim ... it goes toward our theory of defense." The defendant's theory of defense was that (1) the victim said the man who raped her gave her gonorrhea, (2) the defendant did not have gonorrhea, therefore (3) the defendant was not the man who raped her.

We find no merit to the argument of the defendant. Admissibility of past sexual behavior of the complaining witness is restricted by statute to two conditions: (1) such past sexual behavior involved the defendant, or (2) such evidence supports an inference the defendant reasonably believed the complaining witness would have consented to his actions. Code Ann. § 38-202.1 (Ga. L. 1976, p. 741). Such exceptions are exclusive and neither was met under the evidence in this case. *Lamar v. State,* 243 Ga. 401 (2) (254 SE2d 353). The trial court did not err in denying defendant's counsel permission to pursue this line of questioning in open court.

2. The state presented the testimony of two women who identified the defendant as the person who raped them previous to the offense alleged in this case. One victim, Miss K. T. testified she had known the defendant prior to the time he raped her. The other victim, Miss J. B. stated she had been raped by the defendant on January 1, 1979. She had met him previously at a neighborhood store when he claimed to be an artist and wanted to paint her portrait. J. B. had given him her phone number but when he called she told him she had changed her mind. She was awakened during the early morning hours of January 1 by a man attempting to undress her. She fought with him for an extended period of time to the extent of breaking a mirror over his head, but ultimately he accomplished his purpose. After he started to leave she turned on the light and saw his face briefly. He shielded his face and went into the kitchen and left by the back door. About a half hour later there was a knock at her door and she asked who it was. The person said: "It's me, Frank, I left my wallet

in your bedroom. Will you get it for me?" She found the wallet and it contained a driver's license with the name of Franklin Grant. She could see through her door and compared the picture on the driver's license with the man at the door. They were the same person. She told him she couldn't find his wallet and called the police. The defendant departed before the police arrived. The wallet and its contents were introduced in evidence. The defendant identified it as his wallet but stated he had misplaced it New Year's Eve. He denied that he had been to her room that night but had spent the night in the same house with a friend. He also denied that he had gone back to her room to recover his wallet.

Miss J. B. gave the wallet to Detective Goolsby and she testified that the wallet contained a driver's license, a one dollar bill, an insurance card, a calling card with the victim's name and telephone number and "several other calling cards and telephone numbers." Detective Goolsby stated that the wallet had been in the custody of the chief investigator since January 1st of 1979. The wallet and its contents were offered in evidence at the close of the state's case — along with the other state exhibits. A general objection was made by the defendant. When the items were to be given to the jury, defendant discovered that "the wallet has certain things in it that I was not aware of including something called a new super sex frenchtickler . . ." He objected to this item going to the jury as it was not listed in the inventory taken by the detective. The judge stated that he would "let it go out like it was admitted." Defendant argues that the item was prejudicial because it "tends to blacken his character and inflame the jury against him . . ."

We find no reversible error. Counsel for the defendant is the person who found the condom in the defendant's wallet. The wallet was identified by the defendant as his and had been found at the scene of the rape. The defendant was identified as the perpetrator of that rape. The wallet was shown to have been in possession of the police since being found at the rape scene and was admitted in evidence without any specific objection to this item. There was no evidence of tampering. The state need not negative every possibility of tampering but only reasonable assurance of identity, and when there is only a bare possibility of tampering it is proper to admit the evidence and let what doubt remains go to the weight to be accorded the evidence. *Anderson v. State,* 247 Ga. 397, 399 (276 SE2d 603). Possession of such an item does have a tendency to show bent of mind toward sexual conduct. *Felker v. State,* 144 Ga. App. 458, 459 (241 SE2d 576); *Layne v. State,* 147 Ga. App. 511 (249 SE2d 324). The rule in Georgia is that if admissibility of such evidence is doubtful, the evidence should be admitted and its weight left to the jury. *Patterson*

*v. State,* 233 Ga. 724, 725 (213 SE2d 612). Furthermore, even if the item should have been excluded, in view of the testimony of the three rape victims identifying the defendant, it is highly probable that this collateral issue to a rape not charged did not contribute to the conviction in this case. *Johnson v. State,* 238 Ga. 59 (230 SE2d 869); *Hodge v. State,* 239 Ga. 612 (2) (238 SE2d 404).

3. The defendant's wallet contained a calling card with the name and phone number of the rape victim — J. B. J. B. testified that she had met the defendant in a neighborhood store and had given him the number when defendant claimed to be an artist and wanted to paint her portrait. When he called she had changed her mind because she called the store that he said he managed and they advised her he did not work there at the present time and had never been the manager. The defendant testified he met J. B. on New Year's Eve — the night this incident occurred but had never talked to her before and had not met her at a neighborhood store nor received her telephone number from her, but had obtained it from his friend that lived in the same building with her. He also denied that he had ever called J. B. on the telephone. He admitted that he had her telephone number in his wallet on two cards and one was in a different handwriting. He was then cross-examined about two other phone numbers recorded with women's names in his wallet. He did not recall who they were. The district attorney asked: "Is that another girl that you visited at night uninvited?" The defendant objected and moved for a mistrial. The court instructed the jury that the question asked was not evidence and advised the district attorney not to place the defendant's character in issue. Thereafter, the district attorney questioned the defendant about two other names in his wallet. One turned out to be his "ex-wife."

The question was improper. The innuendo and insinuation were clear. However, the jury was properly instructed and counsel was rebuked. Where the question amounts to an improper comment by counsel, and counsel has been rebuked and the jury instructed, an appellate court will not reverse absent abuse of discretion of the trial court. See *Gunter v. State,* 223 Ga. 290 (3) (154 SE2d 608); *Lenear v. State,* 239 Ga. 617 (13) (238 SE2d 407); *Young v. State,* 149 Ga. App. 533, 535 (254 SE2d 749). We find no abuse of discretion.

4. During voir dire a juror requested not to serve because she was "familiar with someone related to the defendant." Counsel for defendant asked that she be excused for cause but after finding that she was familiar with the defendant's mother expressed doubt that this was a proper reason. The juror stated: "I think I could be just as fair. I just prefer not to serve on the case since I'm familiar with her." She was excused.

A second juror expressed a desire not to serve "for a reason of something that happened about eight years ago . . . to my daughter, and I would like not to serve." The court responded that "probably none of the jurors want to serve . . . Do you think that would make it difficult for you to be fair and impartial? The Juror: I don't think it would make it difficult for me to be fair. The Court: Would it make it difficult for you to give the defendant a fair trial? The Juror: No. The Court: Would you be prejudiced against him because of something that has happened? The Juror: No, I wouldn't be prejudiced." The defendant requested the juror be excused for cause and it was denied. Counsel then exercised one of his strikes to remove the juror.

The defendant contends that two jurors expressed the same reservation about serving. The juror who was favorable to the defendant was released for cause. The juror who was favorable to the state was retained. It is alleged the defendant was denied his constitutional right "to a trial by an impartial jury . . ." " 'A defendant is entitled to be tried by a fair and impartial jury [cit.] and to exercise knowledgeable challenges in the pursuit of this judicial ideal.' " *Jones v. State,* 247 Ga. 268, 270 (275 SE2d 67). Counsel have a statutory right to examine potential petit jurors on any matter or thing which would illustrate any interest of the juror in the cause, including any opinion as to which party ought to prevail, the relationship or acquaintance of the jury with the parties or counsel therefor, and any fact or circumstances indicating any inclination, leaning or bias which the jury might have respecting the subject-matter of the suit, or counsel or parties thereto, and the religious, social and fraternal connections of the juror. Code Ann. § 59-705 (Code § 59-705, as amended through Ga. L. 1951, pp. 214, 215). If the defendant in a felony trial has to exhaust his peremptory strikes to excuse a juror who should have been excused for cause, the error is harmful. *Bradham v. State,* 243 Ga. 638 (3) (256 SE2d 331). Thus, the question presented is whether or not a juror was retained who should have been excused for cause. We find there was no juror retained who should have been excused. The answers given by the second juror demonstrated that her personal predilection as to the event which occurred involving her daughter would not cause her to be prejudiced against the defendant, nor impair her ability to be impartial, to consider the issues based solely on the evidence, and to make fair decisions and give the defendant a fair trial. As such, she was a qualified juror. *Williams v. State,* 177 Ga. 391, 411 (4) (170 SE 281); *Morgan v. State,* 211 Ga. 172, 175 (84 SE2d 365); *Clemon v. State,* 218 Ga. 755, 758 (130 SE2d 745); *Butler v. State,* 231 Ga. 276 (201 SE2d 448); *Taylor v. State,* 243 Ga. 222 (2) (253 SE2d 191); *Jordan v. State,* 247 Ga. 328, 339 (6) (276 SE2d 224). " 'Although the question of juror

impartiality is a mixed question of law and fact, the trial court's findings of impartiality will be set aside only where "manifest" prejudice to the defendant has been shown.'" *Jones v. State,* 247 Ga. 268, 270, supra. We have found no prejudice to the defendant from the failure to excuse the second juror who was fully qualified.

In the same manner, we have found no prejudice to the defendant from the excusal of the first juror — a juror he requested be excused for cause. Although the defendant wavered after ascertaining the complete facts, the challenge for cause was never withdrawn, and no objection was made to the excusal of this potential juror.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED JANUARY 7, 1982.

*Tommy Chason,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, H. Allen Moye, Candiss L. Howard, Assistant District Attorneys,* for appellee.