## S97A1963. HOLMES v. THE STATE.
(498 SE2d 732)

HINES, Justice.

Donovan Holmes appeals his conviction for malice murder.[1] For the reasons which follow, we affirm.

Terry Walker was talking on a public telephone outside a convenience store. As he finished his conversation, two men approached. One man produced a gun and told Walker to give them his money. Walker fled and was shot in the back, but he continued to run. The shooter told his accomplice to cut Walker off, and the accomplice

---

[10] *Alford,* 264 Ga. at 245.
[1] The crime was committed on January 11, 1996. In the July term of 1996 Holmes was indicted on one count of malice murder, one count of felony murder while in the commission of the offense of armed robbery, and one count of felony murder while in the commission of the offense of aggravated assault. He was tried before a jury on January 27-29, 1997, and found guilty of malice murder and felony murder while in the commission of the aggravated assault; he was found not guilty of felony murder while in the commission of armed robbery. Holmes was sentenced on February 12, 1997 to life imprisonment for malice murder to run concurrently with a sentence in another case. The felony murder stood vacated by operation of law. OCGA § 16-1-7. He moved for a new trial on March 14, 1997, which was denied on June 23, 1997. A notice of appeal was filed on July 18, 1997, the appeal was docketed in this Court on August 19, 1997, and submitted for decision without oral argument on October 14, 1997.

went around the store. The shooter ran directly after Walker. In a nearby building, Walker was found dead from a single gunshot wound to the back.

At trial, an eyewitness identified Holmes as the man who shot Walker. The State also played an audio tape of Holmes' custodial statement in which he admitted being one of the two men who approached Walker, but contended that it was his companion Johnson who fired. Holmes admitted telling Johnson to shoot Walker, but contended he did so only because he believed Walker was going for a gun. Holmes also stated that he and Johnson left the area in a stolen car they had brought to the scene.[2]

1. Holmes challenges the sufficiency of the evidence to support the verdict, contending that the eyewitness' identification of him as the shooter was obviously mistaken and must be discarded. This contention is based on the eyewitness' repeated statements that the taller of the two men was the shooter, even though Holmes' arrest record and Johnson's autopsy record reflected that Johnson was taller than Holmes. At most, this created an inconsistency in the testimony which did not render it without probative value but affected only the weight and credit to be afforded it by the jury. *Clifford v. State*, 266 Ga. 620, 621 (1) (469 SE2d 155) (1996). The jury was authorized to accept the eyewitness' testimony, and the evidence was sufficient for the jury to find Holmes guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Holmes contends that the trial court should have excused prospective jurors Carlton and Covington for cause. Each had been personally close to a murder victim and each expressed some concern about judging the case impartially. The court asked the statutory questions of OCGA § 15-12-164 (a) (1), and neither juror responded that he or she had any bias or partiality.

When Carlton was asked whether, "understanding that everybody brings in their own experiences, could you listen to the evidence in this case and try to take the law and apply the law to the facts as you see it," she responded "I would hope I could." She also stated "I cannot tell you I can be totally unbiased. That is as good an answer as I can give you. I can try, but I can't [guarantee] . . . I think anybody who says they can is not quite telling the truth, if they have had my experience." Under repeated questioning on the matter, Carlton said she had already answered whether she could be fair and, in the midst of interruption by defense counsel, repeated that she had res-

---

[2] Johnson was never apprehended and was murdered shortly after Holmes made this statement.

ervations about her ability to do so. When Holmes challenged Carlton, the court noted she did not say that she could not be fair, and denied the challenge, specifically relying on Carlton's testimony that she would try to be fair and impartial.

When Covington was asked whether he could be impartial in light of his experiences, he stated he "would attempt with everything in me to be unbiased." He was then asked whether he would try to be fair and impartial to the best of his ability, and answered "[d]epending on the evidence, yes, I'll try to." He later clarified this: "I didn't say I couldn't — I wouldn't be fair. I said I can't promise to be totally impartial, unbiased," and; "It's fair to say that depending on the evidence that's presented, I'll do the best I could, and I would try to make a decision based strictly on the evidence. To say that absolutely none of my personal feelings or biasness or partialities would come into play, that would be less than honest to you." He also answered affirmatively when asked if he would vote to acquit Holmes if the State did not prove beyond a reasonable doubt that he committed the murder.

Whether to strike a juror for cause lies within the sound discretion of the trial court. *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993). For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. Id.; *McClain v. State*, 267 Ga. 378, 380 (1) (a) (477 SE2d 814) (1996). A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. *Waldrip v. State*, 267 Ga. 739, 745 (8) (c) (482 SE2d 299) (1997). Nor is excusal required when a potential juror expresses reservations about his or her ability to put aside personal experiences. See *Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993). See also *Garland*, supra, in which the trial court did not abuse its discretion in refusing to excuse a prospective juror who stated that she would "try" to put aside her emotions and decide the case based upon the evidence. A conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference. *Greene v. State*, 266 Ga. 439, 441 (2) (469 SE2d 129) (1996).

Doing so, it cannot be said that the trial court abused its discretion in refusing to remove Carlton and Covington. Neither prospective juror's responses to voir dire showed a compelling bias or interest in the case. See *Garland*, supra at 497. Although both expressed some reservations about their ability to put aside their experiences,

neither suggested that he or she had already formed an opinion as to Holmes' guilt or innocence.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 23, 1998.

*Virginia W. Tinkler,* for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Barbara B. Conroy, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Allison B. Goldberg, Assistant Attorney General,* for appellee.