A99A1515. MALONE v. THE STATE.
(524 SE2d 770)

JOHNSON, Chief Judge.

After a jury trial, Helen Malone was convicted of two counts of Medicaid fraud. She appeals, contending the trial court committed reversible error by refusing to remove a juror from the impaneled jury when it became apparent that the juror was biased against her. We find no abuse of discretion and affirm.

Malone, who was an accountant, opened a mental health clinic with her business partner, psychiatrist Theodore Smith. Several years later, Malone and Smith were charged with requesting and receiving payments from the Georgia Department of Medical Assistance for psychotherapy services which had not been rendered. See OCGA § 49-4-146.1 (b) (1), (2).[1]

At trial, shortly after the state began examining its first witness, one of the jurors, who is a chiropractor, gave a note to the trial judge. The trial court read the note into the record. It stated:

> I am on the board of directors of Guardian Care Alliance, a Preferred Provider Organization, P.P.O., in the State of Georgia. Guardian Care Alliance does have contracts in Georgia wherein chiropractors do have access to Medicaid funds. At our most recent board meeting in mid-August, I and other board members chose to expel a chiropractor for suspected Medicaid fraud. We also, due to the severity of this case, have turned him in to the Board of Examiners for their evaluation and discipline. I did specifically review the doctor's records and specifically addressed the issue with the remainder of the Guardian Care Board. Again, this resulted in the expulsion of the provider from our P.P.O. network. I

---

[1] This was Malone's second trial. In the first trial, Malone and Smith were convicted. We reversed the convictions based on a *Batson* issue. See *Malone v. State*, 225 Ga. App. 315 (484 SE2d 6) (1997). Smith later pled guilty and then testified against Malone at the second trial.

personally am a very ethical provider, have a very good reputation within my profession, which certainly contributed to my acquiring a board position with Guardian Care Alliance. I do not tolerate fraudulent [medical] conduct. Considering the above, do I still qualify as a member of the jury? I am willing to serve.

Both the prosecutor and defense attorney were then allowed to question the juror. The defense attorney asked the juror: "[D]o you believe that your mind is still impartial between the State and the defendant based on your recollection of your policy about what you had encountered doing with a Medicaid fraud situation in the chiropractic service?" The juror replied:

Unlike the judicial system, I have to make people guilty — supposedly make them guilty and suspend them until they're proven innocent, as protection toward society. And I tend to — I would have to say that I tend to make someone guilty before they have proven themselves as such.

Defense counsel then asked:

Do you believe that the opinions that you hold because of your background in this Medicaid fraud in the chiropractic community that you would be unable at this time to remain impartial and hear the evidence and make a decision based solely on the evidence that comes from the witness stand and the law as given to you by the Court?

The juror remarked: "I'll tell you about where I'm at. I have an anger that's stirred up about it. I feel impartial at this particular time. I do not know whether that would be alleviated as we've gone along." Defense counsel asked the juror if, at this time, he had "an open and impartial mind between the State and that defendant." The juror stated: "At this point, I don't feel partial."

The prosecutor asked the juror about his background in Medicaid fraud. The juror stated that:

It closely parallels what I'm hearing right now, and as I started listening to that, I thought I'd give y'all some background here on where I'm coming from. It involves the falsification of records, involves a case where it was my detection on this particular one, as you have done, that came up with this thing where this guy could not have possibly treated this many people, based on the time and the codes.

The following colloquy then ensued:

> [Prosecutor]: Do you think you could listen to the facts and the evidence and follow the Court's charge, regardless of whether your background comes into it?
> [Juror]: I'm going to say that I would probably be listening very closely and consider all of that. But I come in here with the strong judgment already. Whether that would be all persuaded or not, I don't know.

The prosecutor asked the juror if he could apply the court's charge to the facts presented, even with his background. The juror said he "would make every effort to do that."

Defense counsel asked the juror no other questions but moved to exclude him, claiming the juror was disqualified because he worked on a similar case, equivocated on his impartiality, and was now in an adversarial position with defense counsel. The trial court refused to excuse the juror. Malone's motion for mistrial based on the juror's alleged disqualification was denied.

Before a juror is excused for cause, it must be shown that he holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge on the evidence. *Davis v. State*, 229 Ga. App. 787, 788 (1) (a) (494 SE2d 702) (1997). The question of whether to strike a juror for cause lies within the sound discretion of the trial court. *Brady v. State*, 270 Ga. 574, 575 (2) (513 SE2d 199) (1999). The trial court's conclusion as to bias is based on findings of demeanor and credibility which are peculiarly within the trial court's province, and those findings are to be given deference. Id.

The record in this case supports the trial court's finding that the juror was impartial. The juror repeatedly stated that he was not partial. He also said he would probably listen very closely and make every effort to consider the law and evidence. And although the juror said that in his work he tends to treat fraud suspects as guilty until proven innocent, he stated that that was "[u]nlike the judicial system." The implication is that he knows that the judicial system uses a presumption other than the one he normally employs. The juror's remarks are not indicative of someone whose opinion of guilt or innocence was so fixed and definite that he could not reach a decision based on the evidence and charge.

Even if the juror was not sure about his impartiality, he was not necessarily disqualified. See *Gibbins v. State*, 229 Ga. App. 896, 898-899 (3) (495 SE2d 46) (1997); *Parker v. State*, 229 Ga. App. 217-218 (1) (493 SE2d 558) (1997). Excusal is not required when a juror

expresses doubt as to his ability to put aside personal experiences. *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998).

Nor was the juror disqualified by his statement that he "do[es] not tolerate fraudulent . . . conduct." A juror can abhor a specific crime and still be qualified to serve on the jury. *Lord v. State*, 194 Ga. App. 749, 750 (1) (392 SE2d 17) (1990); *Harris v. State*, 178 Ga. App. 735, 737 (344 SE2d 528) (1986). The abhorrence and doubt expressed by the juror in this case go to the particular offense, not the particular offender. See *Lord*, supra. The juror expressed no bias or prejudice against *Malone* or any fixed opinion about *her* guilt. His statement that he came in with "the strong judgment already" does not indicate any bias against Malone personally, since he apparently did not know her before trial; instead, viewed in context, it seems to indicate his "strong judgment" is about unethical medical conduct predicated upon his background in investigating cases of Medicaid fraud. Similarly, the juror's professed anger "about it" seems to be directed at Medicaid fraud in the chiropractic community, rather than at Malone personally. Under the circumstances presented here, the trial court did not abuse its discretion in refusing to excuse this juror for cause. See *Scott v. State*, 193 Ga. App. 577, 579 (2) (388 SE2d 416) (1989); see *Holmes*, supra.

Malone argues that the juror's failure to reveal during voir dire his involvement in Medicaid fraud cases deprived her of her right to exercise knowledgeable peremptory strikes and constituted manifest prejudice. See generally *Davis*, supra at 789 (1) (b). Malone says she would have used a peremptory strike against the juror had she known of his involvement in Medicaid fraud investigations. However, no one asked the juror if he was involved in Medicaid fraud cases. There is no evidence that the juror intentionally failed to answer or falsely answered questions propounded during voir dire. Where a juror answers questions in good faith and with no deliberate intent to mislead, the trial court may well find that no prejudice resulted, even though the lack of disclosure might have impaired the defendant's right to exercise a knowledgeable peremptory strike. Id. The record before us discloses no basis on which to conclude that the trial court's failure to excuse this juror prejudiced the defendant. See *Grant v. State*, 160 Ga. App. 837, 841-842 (4) (287 SE2d 681) (1982). The trial court did not abuse its discretion in refusing to remove the juror.

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED NOVEMBER 8, 1999.

*Jerome C. McKee*, for appellant.
*J. Tom Morgan, District Attorney, Thurbert E. Baker, Attorney*

*General, Nancy B. Bordeaux, Assistant Attorney General*, for appellee.