## A00A0145. MERNEIGH v. THE STATE.
(531 SE2d 152)

JOHNSON, Chief Judge.

A jury found Raymond Merneigh guilty of theft by shoplifting and two counts of aggravated assault. Raising seven enumerations of error which we discuss in detail below, Merneigh appeals from the judgments of conviction entered upon the jury verdicts.

Viewed in the light most favorable to support the jury's verdict, the evidence presented at trial shows that Merneigh entered a Douglas County Winn-Dixie grocery store where he obtained cigarettes and film from store employees at counters where those items were located. Not long thereafter, one of these employees saw Merneigh in the checkout line and noticed he had only beer in his shopping cart. The employee told a food manager that a man had cigarettes and

had not brought them through the checkout line. The employee approached Merneigh and asked about the cigarettes and film. Merneigh began yelling and left the store, activating the store's security system alarm as he left. The food manager saw the employee confront Merneigh about the cigarettes, saw Merneigh set off the store alarm as he left the store, and saw Merneigh pull film from his pocket and throw it at the customer service employee. At the time, this food manager was on the in-store telephone with the store manager, who was in his office within the store. The food manager told the store manager about the suspected shoplifter. As the two talked, the store manager heard the store's security alarm and ran downstairs. The employee and the food manager ran after Merneigh, shouting for him to stop. Merneigh told them to leave him alone or he would hurt them with something he had. As the store manager joined the chase, the employee stopped chasing Merneigh and returned to the store. On her way back to the store, she saw a car parked near the store exit, with meats, cigarettes and other items on the seat. It was later determined that this car belonged to one of Merneigh's relatives.

The food manager and the store manager caught up to Merneigh, and the store manager pushed him down. Merneigh had a knife in his hand while he ran, and after he had been pushed to the ground, he got up swinging the knife, lunging at both men. Using profane language, Merneigh told both men they had "messed up." When they backed away, Merneigh turned in the opposite direction and ran into a wooded area, where police officers found and arrested him a short time later. The police found two knives in the immediate area of Merneigh's arrest.

1. An assault is an attempt to commit a violent injury to the person of another or an act which places another in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20. Aggravated assault is an assault conducted with an object which, when used offensively against a person, is likely to result in serious bodily injury. OCGA § 16-5-21. Merneigh contends the trial court erred in failing to dismiss the aggravated assault counts of the indictment because they do not indicate which of the two means of committing an assault is relied on by the state. We disagree.

Count 2 of Merneigh's indictment reads: "for that the said accused . . . did unlawfully make an assault upon the person of Michael Jason Frank, with a knife, the same being an object which when used offensively against a person is likely to result in serious bodily injury. . . ." Count 3 uses the same language but names a different victim.

Merneigh's right to reasonable notice of the charges against him

was satisfied by this language in the indictment.[1] We have previously held that such language in an indictment sufficiently "charges an assault by way of either manner contained in the simple assault statute."[2] Here, either manner of simple assault could have occurred, and the trial court charged the jury as to both manners contained in the simple assault statute. The trial court did not err in refusing to dismiss the aggravated assault counts of the indictment.

2. In its final jury instructions, the trial court charged the jury in these words:

> Now I'm going to define something called aggravated assault, but to define an aggravated assault I must first define for you what's called assault. A person commits a simple assault when that person either attempts to commit a violent injury to the person of another or commits an act which places another in reasonable apprehension of immediately receiving violent injury. A person commits the offense of aggravated assault when the person assaults another person with a deadly weapon which, when used offensively against a person, is likely to or actually does result in serious bodily injury. A knife is a deadly weapon.

Merneigh contends this charge violated his right to due process because he was never specifically charged in the indictment with attempting to commit a violent injury to the person of another, one of the manners in which a simple assault could have occurred.

Contrary to Merneigh's assertion, the trial court did not charge a separate method of committing aggravated assault[3] but simply defined both methods in which an assault can be committed. There was no error.[4]

3. The trial court correctly denied Merneigh's request to charge on reckless conduct as a lesser included offense. An essential element of the offense of reckless conduct is criminal negligence.[5] Here, there

---

[1] See *Jay v. State*, 232 Ga. App. 661, 662 (1) (503 SE2d 563) (1998) (indictment accused Jay of an assault inflicted on his wife " 'with his fists, objects which when used offensively against said person, were likely to result in serious bodily injury contrary to the laws of (this) State' "); *State v. Bolman*, 222 Ga. App. 534 (474 SE2d 721) (1996) (indictment accused Bolman of the offense of aggravated assault in that he " 'did unlawfully make an assault upon the person of another, to wit: Henry Wade Alexander, with a deadly weapon, to wit: a certain knife' ").

[2] *Jordan v. State*, 214 Ga. App. 598, 601 (2) (448 SE2d 917) (1994), overruled on other grounds, *Dunagan v. State*, 269 Ga. 590, 593 (2) (a) (502 SE2d 726) (1998).

[3] Compare *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999) (jury instructed on unindicted manner of committing the crime charged).

[4] See *Jordan*, supra.

[5] OCGA § 16-5-60; *Hall v. State*, 235 Ga. App. 44, 46 (4) (508 SE2d 703) (1998).

is no evidence that Merneigh was simply negligently handling the knife when he swung it at the food manager and store manager, using profane language and telling both victims they had "messed up" while lunging at them with the knife. Under these circumstances, Merneigh was either guilty of aggravated assault or was not guilty of any crime.[6] Therefore, it was not error to refuse to give the requested charge on reckless conduct as a lesser included offense.[7]

4. At trial, Merneigh maintained the position that the attempt by Winn-Dixie employees to arrest him was unlawful; therefore, he was legally permitted to resist the attempt in the manner he did, and, as a result, he claims he could not be guilty of the aggravated assault charges. He requested jury instructions regarding an unlawful arrest by a private person and his right to use force to resist such an unlawful arrest. The trial court refused to give these jury charges as requested. Because there is no evidence to support a conclusion that the attempted arrest by Winn-Dixie employees was unlawful, the trial court properly refused to give the requested instructions.

"A private person may arrest an offender if the offense is committed in his presence or within his immediate knowledge."[8] Here, the customer service employee testified that Merneigh took cigarettes and film without paying for them. She confronted him about the merchandise, and he began screaming as he exited the store and activated the store's security alarm. The food manager knew of the customer service employee's suspicions, saw her confront Merneigh, heard the store's security alarm activate as Merneigh ran out the door, and saw Merneigh pull film from his pocket and throw it at the customer service employee. The food manager, who was on the in-house telephone with the store manager regarding the suspected shoplifter as the events transpired, told the store manager to come right down.

Under these circumstances, it is clear that the customer service employee and the food manager witnessed a shoplifting. It is equally clear that this offense was within the store manager's immediate knowledge because the food manager was telling him about the crime, describing it as it was taking place, because the store manager himself heard the store's security alarm and saw both the customer service employee and the food manager chasing Merneigh as Merneigh attempted to escape.

Citing isolated language in *Williams v. State*,[9] Merneigh asserts that the store manager's actions were unlawful because he was not

---

[6] Id.

[7] Id.; see also *Perryman v. State*, 208 Ga. App. 754, 756 (3) (431 SE2d 742) (1993).

[8] OCGA § 17-4-60.

[9] 171 Ga. App. 807, 809 (1) (321 SE2d 386) (1984).

present when the offense occurred and did not actually see any offense occur. We do not agree.

Merneigh's argument ignores the fact that the crime did occur within the presence of the food manager, one of the two persons attempting the arrest, and it occurred within the immediate knowledge of the store manager. OCGA § 17-4-60 provides, in pertinent part, that a private citizen may arrest an offender "if the offense is committed in his presence *or* within his immediate knowledge."[10] It does not distinguish between misdemeanor and felony offenses. The term "within his immediate knowledge" enables a private citizen to use any of his senses to obtain knowledge that an offense is being committed.[11] A private citizen is not required to actually be present when a misdemeanor offense occurs.

In *Williams*, a panel of this court upheld a private citizen's lawful arrest, finding that the misdemeanor offense was clearly committed within the presence and within the immediate knowledge of the private citizen and that the arrest was effected immediately after the offense occurred.[12] Language in the *Williams* decision cited by Merneigh, which in isolation appears to suggest that a citizen's arrest in a misdemeanor case may be made only when the offense was committed in his presence, is simply an application of OCGA § 17-4-60 to the particular facts in that case. This language is mere dicta. It was not only unnecessary to the holding in *Williams* because the private citizen was actually present when the offense occurred, but it directly conflicts with the clear language of the statute and cases decided both before and after *Williams*.[13]

It is not error to refuse a request to charge when there is no evidence to support it.[14] Based on the evidence presented in this case, the shoplifting offense was committed in the presence of the food manager and within the immediate knowledge of the store manager. Therefore, both were authorized by law to arrest Merneigh, and the trial court did not err in refusing to give Merneigh's requested jury instructions regarding the unlawful arrest by a private person and Merneigh's alleged right to use force to resist the attempted arrest.

5. The trial court did not err in denying Merneigh's request to charge the jury on the defenses of justification and self-defense. Merneigh did not testify at trial. There is no evidence whatsoever in the record to support the requested charge. Specifically, there is no evi-

---

[10] (Emphasis supplied.)

[11] *State v. Folk*, 238 Ga. App. 206, 208 (521 SE2d 194) (1999); *Winn-Dixie Stores v. Nichols*, 205 Ga. App. 308, 310-311 (2) (422 SE2d 209) (1992).

[12] *Williams*, supra at 809.

[13] OCGA § 17-4-60; *Winn-Dixie Stores v. Nichols*, supra; *Walker v. State*, 144 Ga. App. 838-839 (2) (242 SE2d 753) (1978).

[14] See *Hush v. State*, 193 Ga. App. 421, 422 (2) (387 SE2d 651) (1989).

dence that Merneigh was in fear of or desired to prevent injury to himself when he assaulted store personnel with the knife. The only evidence showed that Merneigh stole merchandise from Winn-Dixie and was fleeing to avoid arrest.

6. Merneigh contends the trial court erred in refusing to strike a juror for cause based upon that juror's acquaintance with one of the state's witnesses. The prospective juror indicated that she knew one of the state's witnesses. The following colloquy transpired:

> THE COURT: Is there anything about your knowledge of that person or your relationship with that person that would cause you to have a fixed opinion on the issue of guilt or innocence in this case?
> THE POTENTIAL JUROR: Not necessarily.
> THE COURT: You indicated you had a — I guess I'll call it a favorable relationship with the person.
> THE POTENTIAL JUROR: He was my friend. I would be more inclined to be more favorable to his testimony than the — you know, I forget —
> THE COURT: The Defendant.
> THE POTENTIAL JUROR: — the individual's name.
> THE COURT: Mr. Merneigh.
> THE POTENTIAL JUROR: Yeah.
> THE COURT: Would you be able to listen to the evidence and the court's instructions on the law and then make a decision based upon that information?
> THE POTENTIAL JUROR: If there was concrete evidence that could be proven in black and white, yes.

Merneigh's attorney then asked one question:

> MR. WALLACK: . . . [I]f there was a witness who said something different from [the witness you already know], would you believe [the witness you already know] just because of your friendship or your past relationship with him?
> THE POTENTIAL JUROR: Possibly.

Whether to strike a juror for cause lies within the sound discretion of the trial court.[15] In order to disqualify a prospective juror for cause on the ground that she could not fairly and impartially judge the case, it must be shown that she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will

---

[15] *Kirkland v. State*, 271 Ga. 217, 219 (2) (518 SE2d 687) (1999).

be unable to set the opinion aside and decide the case based upon the evidence or the court's charge on the evidence.[16] "A conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference."[17] Under this legal standard the evidence was sufficient to support the trial court's credibility determination that the prospective juror could decide the case impartially.

The fact that a juror has expressed a belief in the credibility of a witness does not mandate that she be excused for cause.[18] Here, the potential juror testified that while she would be more inclined to believe or would "possibly" believe the testimony of the witness she knew over the testimony of Merneigh or another witness, her relationship with the witness would "[n]ot necessarily" cause her to have a fixed opinion on the issue of guilt or innocence in the case. She further testified that she would be able to listen to the evidence and the court's instruction on the law and then make a decision based upon that information "[i]f there was concrete evidence." Contrary to Merneigh's assertion, this comment did not indicate that the burden of proof was shifted to Merneigh.[19]

The trial court did not abuse its discretion in refusing to strike the prospective juror for cause. At no time did the prospective juror indicate that she would be unable to be a fair and impartial juror. She did not indicate any prejudice or bias against Merneigh and did not indicate that she had formed an opinion about Merneigh's guilt or innocence.[20]

7. Merneigh contends the trial court erred in denying his motion to quash the indictment or, in the alternative, to redact the reference to an alias in the indictment. He claims the alias (Larry Raymond Merneigh) served no useful purpose and operated to prejudice him. We find no error. "Where the accused is known by different names it is lawful for the indictment to identify the accused by all such names as alias dicta."[21] In addition, Merneigh has failed to show any harm by the use of his alias in the indictment.

*Judgment affirmed. McMurray, P. J., and Phipps, J., concur.*

---

[16] Id.

[17] (Citation omitted.) Id.

[18] *Brown v. State*, 268 Ga. 354, 356 (3) (490 SE2d 75) (1997); *Foster v. State*, 248 Ga. 409, 411 (3) (283 SE2d 873) (1981).

[19] See *Malone v. State*, 240 Ga. App. 732 (524 SE2d 770) (1999); *Montijo v. State*, 238 Ga. App. 696, 703-704 (6) (520 SE2d 24) (1999).

[20] See *Brady v. State*, 270 Ga. 574, 575 (2) (513 SE2d 199) (1999); *Holmes v. State*, 269 Ga. 124, 125-126 (2) (498 SE2d 732) (1998).

[21] (Citation and punctuation omitted.) *Majors v. State*, 203 Ga. App. 139, 143 (7) (416 SE2d 156) (1992). See also *Stevens v. State*, 247 Ga. 698, 701 (3) (278 SE2d 398) (1981); *Jenkins v. State*, 216 Ga. App. 433, 434 (4) (454 SE2d 543) (1995).

DECIDED MARCH 13, 2000.

*Jill L. Anderson, Lee W. Fitzpatrick*, for appellant.
*David McDade, District Attorney, James E. Barker, Assistant District Attorney*, for appellee.