76909. TOWLER v. THE STATE.
(372 SE2d 242)

DEEN, Presiding Judge.

A Douglas County jury found appellant guilty of child molestation. On appeal he enumerates as error the trial court's denial of his motion for directed verdict of acquittal, an allegedly fatal variance between allegata and probata, certain allegedly erroneous jury instructions, and the denial of a motion for new trial on the basis of an allegedly improper contact between a juror (here, the foreperson) and a court employee. *Held*:

1. We have thoroughly examined the briefs, the transcript, and the remainder of the record and find no merit in appellant's enumerations regarding jury instructions, fatal variance, or denial of the motion for directed verdict. As to the latter, there was testimony that "75-100" separate and independent sexual acts of molestation and

child abuse took place during the one or two years of camping out. Not only Boy Scout films, but also sexually explicit movies, were shown to the youngsters, seemingly as a performance blueprint of things to come, *Megar v. State*, 144 Ga. App. 564, 568 (241 SE2d 447) (1978), and as a stimulant to encourage subsequent sexual activity because "it feels good." See *Howell v. State*, 172 Ga. App. 805, 808 (324 SE2d 754) (1984). The evidence was abundant to overwhelming in this case with regard to the general grounds.

2. We do find meritorious, however, the enumeration regarding the contact between the foreperson and the court employee. The record reveals that the jury foreperson's mother, a court employee whose duties were unrelated to criminal justice, stated to the foreperson at the family dinner table that one of her (the mother's) superiors at the court had said to her that she understood that the daughter was "holding out" against a guilty verdict and "was going to let a child-molester go free." The foreperson testified that when her mother related the incident to her, she had immediately stated that, as a juror, she was not permitted to discuss the case; and that the subject was not mentioned again between them. The mother's superior testified that she had had no intention of attempting to influence any juror when she made the remark, and that she had not expected the mother to repeat it to her daughter.

The rule in Georgia is that "a defendant is entitled to a trial by a jury untainted by improper influences. It is . . . incontestable that during the pendency of a trial, communication between a juror and a witness is error. However, we do not conclude that every improper communication is prejudicial per se." *Clark v. State*, 153 Ga. App. 829, 830 (266 SE2d 577) (1980). It is the State which has the burden of proving that an unauthorized communication was not prejudicial. *Smith v. State*, 218 Ga. 216 (126 SE2d 789) (1962). In determining that the unauthorized contact or conversation in *Clark*, supra, was not harmful, the court focused on three factors: the lack of "any scintilla of evidence" that there was an attempt to discuss the merits or to exert any influence upon the juror, and the fact that the juror who was contacted did not pass the conversation on to any other juror. Id. at 830. Here, as in *Clark*, the information was passed on to no other juror.

As to the other two factors considered in *Clark*, however, the evidence is less clear-cut. Obviously, to label the defendant "a child-molester" is to express an opinion on the merits of the case. It would seem, further, that the determination of whether the contact-conversation was a knowing attempt to exert influence on the verdict must depend on a number of factors, including (but not necessarily limited to) the context in which the conversation/contact occurred, the extent to which the merits of the case were discussed, the number and iden-

tity of the person or persons to whom the remarks were addressed or who were able to hear it, and the credibility of those testifying regarding the incident. In the instant case the supervisor's remark was made in a casual — perhaps even innocuous — context, according to the testimony; few, if any, persons were present other than the juror's mother; the merits were not discussed extensively; and the credibility of neither the supervisor, the mother, nor the daughter (the foreperson) was impeached. The supervisor testified that she had not intended to influence the juror or harm the defendant when she made the remark, and, moreover, that she had not expected it to be repeated. The mother likewise testified that she had had no improper motive in repeating the remark. Moreover, there was sufficient evidence to support a "guilty" verdict.

Nevertheless, in the case *sub judice*, as distinguished from the fact situation in *Clark*, the making of the remark was, in the circumstances, gratuitous and could easily have been avoided; the remark itself did express an opinion on the merits of the case — an opinion that reflected adversely on the defendant; and the reasonable prudent person of ordinary experience in life would or should have known that such a remark, impliedly if not explicitly critical of the foreperson's rumored stance, would, when made to or in the presence of that juror's mother, likely be passed on by the mother to her daughter, the juror. This is not to excuse the mother for repeating the remark to her daughter; it is merely to observe that it was in accord with what experience teaches regarding human nature that she would do so. Moreover, the very language in which the remark was couched was itself inherently prejudicial. To "hold out" suggests stubborn or unreasonable persistence; "child-molester" reeks with unsavory implications.

We are not persuaded that the State has carried its burden of establishing that the contact was harmless. The fact remains that, despite a sufficient quantum of evidence to authorize a conviction, the foreperson did "hold out" against a conviction for some time before ultimately changing her vote. There is nothing more threatening to the integrity of our legal system than the possibility that the person or persons — whether judge or jury — charged with the responsibility for finding a defendant guilty or not guilty may be corrupted by the intrusion of interested outsiders into the sanctity of the factfinder's deliberations. It matters not whether the incentive be money, influence, or some other tangible or intangible entity. Jurors, like Caesar's wife, must avoid the very appearance of impropriety. Although we cannot say definitively that impropriety did occur in the instant case, the State has failed to carry its burden of persuasion sufficiently to establish that it did not. See *Jones v. State*, 258 Ga. 96 (366 SE2d 144) (1988). We therefore reverse the judgment below so that a new

trial may be held. " 'The rights of the best of men are secure only as the rights of the vilest and most abhorrent are protected.' [Cit.]" *Ware v. State*, 128 Ga. App. 407, 412 (196 SE2d 896) (1973).

*Judgment reversed. Carley and Sognier, JJ., concur.*

DECIDED JULY 5, 1988 —
REHEARING DENIED JULY 26, 1988 

*Gerald P. Word*, for appellant.

*Frank C. Winn*, District Attorney, *J. David McDade*, Assistant District Attorney, for appellee.