## A97A1301. SCOTT v. THE STATE.

(490 SE2d 208)

Ruffin, Judge.

A Warren County jury convicted Frank Ellis Scott of possessing cocaine and selling cocaine to an undercover officer. The trial court sentenced Scott, a recidivist, to life in prison. He appeals, and we affirm the conviction for reasons which follow.

1. Because Scott contends the evidence was insufficient to support his conviction, we review that evidence in a light most favorable to the jury's verdict. See *Hopkins v. State*, 222 Ga. App. 157 (473 SE2d 267) (1996). The State's chief witness was a Georgia Bureau of Investigation ("GBI") agent who worked undercover in Warren County during 1992. He testified that on July 11, 1992, he went to Scott's home in Warrenton and purchased from Scott $100 worth of crack cocaine, which Scott cut from a "cookie" of crack in his trailer. A GBI chemist confirmed that the substance was, in fact, cocaine. The State presented additional evidence showing Scott sold cocaine to the same undercover officer on May 28, 1992, and was convicted of that offense.

The undercover agent's testimony was sufficient to identify Scott as the person who sold the cocaine and to rebut the testimony of Scott's alibi witnesses. *Hopkins*, supra. "The only issue in this case was the credibility of witnesses, which is a question for determination by the jury. [Cit.] We find the evidence sufficient to meet the stardard of proof required by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. . . ." *Radford v. State*, 188 Ga. App. 204 (1) (372 SE2d 480) (1988).

2. Scott attacks the admissibility of the cocaine by arguing that the State did not prove a proper chain of custody. We find no error in the trial court's admission of this evidence. The undercover GBI agent identified the suspected cocaine he purchased from Scott and testified he carried this material to the State Crime Lab. At trial, he identified the State's exhibit as being the same material he purchased. A crime lab technician testified that she retrieved this same exhibit from her supervisors and identified it as cocaine. Although

the technician who originally received and tested the material did not testify at trial, the crime lab technician testified that crime lab policy requires evidence to be maintained in the lab's evidence locker.

With this evidence, the State proved a sufficient chain of custody. "The burden is on the State to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not negative every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence." (Citation and punctuation omitted.) *Williams v. State*, 165 Ga. App. 708 (2), 709 (302 SE2d 609) (1983). Here, as in *Givens v. State*, 214 Ga. App. 774 (2), 775 (449 SE2d 149) (1994), the crime lab employee who received the evidence from police did not testify, and the defendant did not produce any evidence of tampering. In *Givens*, we did not require the testimony of each individual crime lab employee who handled the evidence; rather, we found that, in the absence of affirmative proof of tampering, proof that the evidence was in the custody of the State Crime Lab established the chain of custody. Id. Therefore, this enumeration of error is without merit.

3. Scott claims the trial court erred by allowing the undercover agent to testify about a conversation he had with Scott during the drug transaction. The agent testified that after he purchased the drugs, he asked Scott about rumors that he had "females" available. Scott replied that he "had a couple of females at another location" who would perform sexual favors for money, and the agent replied, "I may be back." Scott's counsel objected, arguing this testimony impugned his client's character by suggesting he was a pimp. The trial court overruled the objection but cautioned the jury that the statement was admitted for a limited purpose, to show how the encounter between Scott and the agent ended.

We find no error because this testimony "included a statement made by [Scott] during the commission of . . . the offenses for which he was indicted and was an integral part of the res gestae. Surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court. Hence, acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae and it does not matter that the act is another criminal offense." (Citation and punctuation omitted.) *Belcher v. State*, 201 Ga. App. 139, 140 (2) (410 SE2d 344) (1991). We find this conversation no different from that in *Belcher*, where the victim was allowed to testify that while the defendant held her against her will, he told her about his prior crimes and time in prison. Id. See also *Shealey v. State*, 257 Ga. 437 (2) (360 SE2d 266) (1987).

4. In several enumerations, Scott claims the trial court erred by denying him the right to cross-examine certain witnesses, and by so doing denied him a fair trial. "The admission of evidence at trial is within the discretion of the trial court. Although each party is entitled to a thorough and sifting cross-examination, that right is not unfettered. The trial court may, in its discretion, restrict the scope of cross-examination to the relevant issues. [Cits.] The court's discretion will not be interfered with on appeal unless an abuse is present. [Cit.]" *Murray v. State*, 219 Ga. App. 405, 407 (465 SE2d 515) (1995).

(a) First, the trial court would not allow Scott's attorney to delve into the identity of the confidential informant. Scott does not contest this limitation, designed to protect the identity of the informant. See *Scott v. State*, 219 Ga. App. 906, 908, n. 1 (467 SE2d 348) (1996). Rather, Scott argues the trial court prevented him from establishing that a "Larry Walker" was *not* the confidential informant. Nothing in the record shows who Larry Walker is or what relevance he had to this case. The trial court did not err by preventing Scott from obtaining an answer to this question. See *Murray*, supra.

(b) Next, Scott contends the trial court erred by preventing him from asking the agent whether he had "seen" the confidential informant the day of trial. As Scott conceded the importance of keeping the confidential informant's identity a secret, the trial court did not err by preventing Scott from asking a question which could potentially expose the informant. Moreover, during a colloquy with the trial court, Scott's attorney said he *knew* the informant's identity; therefore, we do not see how this question was relevant to the case. We find no abuse of discretion.

(c) Scott also claims he was improperly prevented from asking the undercover agent whether he had, on the day of trial, seen the GBI crime lab technician who tested the cocaine. Again, the trial court did not abuse its discretion by excluding this question. See *Palmer v. Taylor*, 215 Ga. App. 546 (1) (451 SE2d 486) (1994) (court properly ruled irrelevant attorney's cross-examination questions which inquired into the names of witnesses present for trial).

(d) Finally, Scott claims his right of thorough cross-examination was denied because the trial court did not allow him to ask the undercover agent how many "buys" he made during the several months of his Warren County investigation. Scott's attorney asked this question on re-recross-examination. The trial court agreed with the State that the question exceeded the scope of re-redirect, during which the State only asked the agent why he had not videotaped or audiotaped the transaction. The trial court has discretion to limit the scope of recross-examination, which is not intended for the introduction of new matter. See *Owens v. State*, 205 Ga. App. 824, 825 (2) (423 SE2d 731) (1992). The trial court did not abuse its discretion by

prohibiting the question as beyond the scope of redirect. See *Moss v. State*, 196 Ga. App. 81, 83 (4) (395 SE2d 363) (1990).

5. The trial court did not err by refusing to grant Scott's motion for mistrial based on an allegation that two prosecution witnesses had broken the rule of sequestration. Although the witnesses admitted they spoke to each other during the course of trial, each denied discussing any substantive aspects of the case. The trial court has discretion to grant or deny a motion for mistrial based on an alleged violation of a sequestration order. See *Owens v. State*, 213 Ga. App. 693, 694 (2) (445 SE2d 818) (1994). Here, where no harm was shown from this alleged violation, the trial court did not abuse its discretion by denying the requested mistrial. Id.

6. In his remaining enumeration, Scott complains of the trial court's refusal to give a curative instruction following the prosecutor's "speaking objection" to Scott's closing argument. Scott's attorney told the jury his client was "an innocent man. He is cloaked in innocence." The prosecutor objected, arguing in the jury's presence that the presumption of innocence had been overcome by evidence and that the presumption "doesn't carry all the way through until closing argument." The trial court neither sustained nor overruled the objection but called counsel forward for a bench conference. Scott requested curative instructions, but the court declined, stating, "I'm not going to call attention to it. I'm just going to let you go on." Scott's attorney resumed his argument, apologized to the jury for the interruption, and once again reminded the jurors, "Frank Scott has the presumption of innocence." During its charge to the jury, the court gave instructions on the presumption of innocence and the State's burden of proof.

The prosecutor's comments were improper and amounted to an incorrect statement of the law, and the trial court should have so instructed the jury. See *Postell v. State*, 200 Ga. App. 208, 216 (6) (407 SE2d 412) (1991); *Oller v. State*, 187 Ga. App. 818, 823 (4) (371 SE2d 455) (1988). However, the particular facts of this case show no grounds for reversal. Scott's attorney was allowed to continue his argument, at which point he again told the jury that his client was presumed innocent, and the court soon thereafter fully and correctly instructed the jury on the presumption of innocence and the State's duty of proving guilt beyond a reasonable doubt. Considering the defendant's statements, the trial court's subsequent instructions, and the overwhelming evidence against Scott, we find the error harmless beyond a reasonable doubt. See *Oller*, supra.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 5, 1997.

*Ross, Wallace & Hammond, Harold W. Wallace III*, for appellant.
*Dennis C. Sanders, District Attorney, Michael E. Eberhardt, Assistant District Attorney*, for appellee.