A98A2182. COBB v. THE STATE.
(511 SE2d 522)

POPE, Presiding Judge.

Portier Cobb appeals from the trial court's order denying his motion for new trial. Cobb contends his convictions for two counts of trafficking in cocaine (OCGA § 16-13-31) and possession of a firearm during the commission of a felony (OCGA § 16-11-106) are not supported by the evidence. He also asserts the court erred by joining offenses for trial, permitting certain rebuttal testimony, admonishing his defense counsel in the jury's presence, and in denying his motion for a mistrial. We disagree and affirm.

1. Cobb challenges the sufficiency of the evidence. " 'On appeal from a criminal conviction, the evidence must be viewed in the light

most favorable to the verdict, and the appellant (defendant here) no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, (are) a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Shabazz v. State*, 229 Ga. App. 465-466 (1) (494 SE2d 257) (1997).

The evidence adduced at trial reveals the following: On November 3, 1993, the Covington-Newton County SWAT Team assisted the East Metro Drug Enforcement Team in executing a search warrant at a home at 147 Cobb Road in Newton County. Upon entering the home, the SWAT team leader found Cobb and three other men sitting in the living room. Cobb was seated in a chair. At the foot of the chair was a white plastic bag containing 25 smaller bags of both crack and powder cocaine. The cocaine, which weighed 177 grams and was 82 percent pure, had an estimated street value of $12,000 to $16,000. Cobb was seated closest to the cocaine. The amount of cocaine found was consistent with "upper or mid-level" drug dealing as opposed to street dealing or personal use.

Also within Cobb's reach was a loaded Intertec .9 millimeter semi-automatic pistol and a loaded 12-gauge shotgun. After police found a recent bill of sale for the Intertec with Cobb's name on it, Cobb admitted the weapon was his. Officers recovered two pagers from the arm of the chair in which Cobb had been sitting. They also found a large amount of ammunition in the living room and a .25 caliber pistol in the kitchen stove. As the SWAT team secured the room, they heard a police scanner. Cobb and his associates were monitoring the Newton County Sheriff's Office radio traffic. A list of the Sheriff's "10" codes was next to the scanner. In the back yard, police found a black Tupperware box containing a set of digital scales and several plastic bags used for packaging cocaine. Police found a cell phone and $81 in cash in the automobile Cobb was driving at the time of his arrest.

Although Cobb denied living at 147 Cobb Road, the State presented evidence to the contrary. Dexter Nolley testified that Cobb shared the house with Kenny Smith, Cobb's cousin, and that Cobb stayed in the left rear bedroom. Smith, who leased the house from Carrie Freeman, confirmed this. Although Freeman did not know Cobb, she knew that Smith was living with a cousin. Cobb kept furniture in the house. Police found an Intertec box in the left rear bedroom of the house along with several M-70 fireworks. Fireworks of

this type were also found in a later search of another of Cobb's residences. Police also found spent .9 millimeter shell casings in the front yard of the house. Cobb admitted he fired his Intertec weapon at the house.

On March 9, 1995, Cobb was again found in the company of several of his associates (one of whom was previously arrested with him) and a large amount of cocaine when police executed a search warrant at 605 Dixie Road, Newton County — Cobb's parent's residence. 605 Dixie Road is about 1,600 feet from 147 Cobb Road, if traveling through the woods; it is about three-tenths of a mile over surface roads. During the search, police found crack and powder cocaine and a set of electronic scales in a bag hidden in the branches of a cedar tree. The tree was located about 20 yards behind a garage in which Cobb had made a "crash pad." Although he had a room inside his parent's home, Cobb explained that he built the apartment so that he could stay there whenever he had a woman spend the night. The cocaine, which weighed 167.1 grams and which was 86 percent pure, had a street value of about $12,000 to $14,000.

The police also found a loaded shotgun just outside the garage apartment door. Police found on Cobb's person a pager and $2,223 in cash. Included in that cash were marked bills that had been used by a confidential informant to buy a quantity of cocaine from 605 Dixie Road just hours before the warrant was executed. None of Cobb's associates had large amounts of cash on them. Inside the main house, a police drug dog alerted on a heap of clothing in Cobb's bedroom closet. Beneath the clothing, officers found a bag containing $14,224 in cash. The officers also found a bag of M-70 fireworks inside that bedroom. The drug dog also alerted several times inside Cobb's garage apartment, though no cocaine was found there.

At the time of this search, Cobb was driving a blue Mazda truck that had his name stitched into the upholstery. He also owned a 1994 Ford Explorer that had been enhanced with a $9,282.24 "gold kit." Cobb paid cash for the kit. He also made a $5,000 cash down payment for the car and regularly made the payments on it.

Police videotaped both searches, and the jury was allowed to view those tapes.

During the search at 605 Dixie Road, police recovered several receipts for items that Cobb had purchased over the last few years. A financial investigator reviewed these receipts and Cobb's bank records. The investigator found that Cobb, who had been unemployed since 1993, had, over a four-year period, spent $46,569.97 more than he had earned.

Given this evidence, the jury was authorized to conclude that Cobb was in knowing, constructive possession of over 28 grams of cocaine in violation of OCGA § 16-13-31 on both November 3, 1993,

and March 5, 1995. See, e.g., *Hite v. State*, 206 Ga. App. 245, 246-247 (2) (424 SE2d 885) (1992).

2. The trial court did not abuse its discretion in joining the November 3, 1993 and March 5, 1995 offenses for trial. "[W]here multiple offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant has an absolute right to a severance of offenses. Where, however, joinder is based on the same conduct or on a series of acts connected together and evince ongoing criminality, severance lies within the sound discretion of the trial court. Offenses are not joined solely because they are of the same or similar character where the similarity reaches the level of a pattern evincing a common motive, plan, scheme or bent of mind." (Citations, punctuation and emphasis omitted.) *Whitfield v. State*, 217 Ga. App. 402, 403 (1) (457 SE2d 682) (1995).

We do not agree with Cobb that the offenses were joined solely because they were alike in character. Although the offenses were separated in time by 17 months, the facts of each offense reveal that Cobb was engaged in a continuing and profitable criminal enterprise as a mid-level cocaine distributor. In each case, Cobb was found in possession of a large amount of relatively pure cocaine and the implements of the drug trade (scales, plastic bags, cell phones and pagers, and heavy-duty arms). Further, both offenses occurred in close proximity to each other in Cobb's personal residences and in the presence of his business associates. Given this evidence, the trial court did not abuse its discretion in joining the offenses. *Villarreal v. State*, 198 Ga. App. 501 (402 SE2d 104) (1991).

3. In his third enumeration of error, Cobb contends the trial court erred by admitting testimony during the State's rebuttal that (a) Cobb was the focus of an investigation, (b) Cobb's Ford Explorer had been seized in a drug condemnation, and (c) a confidential informant purchased cocaine from Cobb shortly before the March 5, 1995 search.

(a) Cobb argues that "[t]he trial court committed reversible error in permitting testimony that appellant was the 'subject of the investigation.'" The statement to which Cobb refers in his brief is a statement made by the district attorney outside the presence of the jury. Cobb does not cite to any rebuttal witness testimony he believes should have been excluded, nor does he summarize it or reprint it in his brief for our review. Because Cobb has failed to support this enumeration with appropriate argument and citation to the record, it is deemed abandoned. See *Hunter v. State*, 201 Ga. App. 9-10 (2) (410 SE2d 204) (1991); see also *Herndon v. State*, 229 Ga. App. 457 (2) (494 SE2d 262) (1997) ("court will not cull the record on behalf of a party in search of error").

(b) Cobb has not cited to any rebuttal testimony regarding a civil

forfeiture proceeding. Rather, he cites to a portion of the transcript where the trial court told the jury that Cobb's Ford Explorer had been "taken by a civil action filed by the D. A.'s office, and it was legally taken." Not only did Cobb fail to object to the testimony which prompted this instruction (testimony, incidently, which he elicited from his own witness), he agreed several times that the court should give the curative instruction of which he now complains. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal." (Citation and punctuation omitted.) *Boatright v. State*, 192 Ga. App. 112, 116 (5) (385 SE2d 298) (1989).

(c) Finally, Cobb contends the court erred in admitting rebuttal testimony establishing that $150 of the $2,223 in cash found on Cobb came from marked bills given to a confidential informant who bought cocaine from 605 Dixie Road a few hours before the search warrant was executed.

The trial court initially suppressed any evidence concerning the CI's drug buy, and the State did not present any evidence about the transaction during the case in chief. Cobb then testified that $1,200 of the money found on his person was given to him in payment for car repairs performed for Emory Jackson, who was present when the March 5, 1995 search was executed. Cobb testified that just before the police arrived, he told Jackson: "Emory, if you did something you need to leave here, man, I said because you're going to get me and my mom in trouble." The trial court permitted the rebuttal testimony because Cobb had "opened the door" to it by offering Jackson as the source of the money found on him.

Pretermitting whether the testimony would have been admissible in the case in chief, it was admissible for the limited purpose of rebutting Cobb's explanation for the cash found on his person. "Where the rebuttal testimony is relevant it is immaterial to its admissibility that it may incidentally tend to place the defendant's character in issue, for in the inclusion in his statement of the facts to be rebutted he has opened the door for its rebuttal." *McGregor v. State*, 119 Ga. App. 40, 41 (165 SE2d 915) (1969). See also *Mulkey v. State*, 250 Ga. 444, 446 (3) (298 SE2d 487) (1983).

4. In his fourth enumeration of error, Cobb asserts the trial court should have granted him a mistrial for two reasons. First, he contends a mistrial was required when an officer testified that Emory Jackson had "disappeared" after he gave a statement to police. However, Cobb did not make a contemporaneous objection to that statement. And, when he did finally object, he agreed to the court's curative instruction. Second, Cobb complains that the court should have declared a mistrial when the district attorney responded to Cobb's objections regarding Emory Jackson's disappearance by saying: "This

is what [defense counsel] does, this is what defense lawyers do all the time." However, after the district attorney and defense counsel apologized to the court for their outbursts, the court stated, outside the presence of the jury: "Okay. Now, I'm also going to mention that I apologize on both your behalfs for losing your cools." Cobb abandoned his objection and acquiesced in the court's ruling. As we have repeatedly held, acquiescence in a court's ruling deprives the defendant of a right to complain about it later. See, e.g., *Morris v. State*, 226 Ga. App. 535, 539-540 (3) (488 SE2d 685) (1997).

5. Finally, Cobb argues that the court committed reversible error by "admonishing" defense counsel in front of the jury. Our review of the transcript reveals only that the district attorney objected to a portion of Cobb's closing argument and that the court sustained the objection, ruling that Cobb's attorney was "wrong." Cobb made no objection to this ruling, and thus it is not preserved for our review. *Morris*, 226 Ga. App. at 539-540.

*Judgment affirmed. Beasley, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 5, 1999.

*James E. Millsaps*, for appellant.
*Alan A. Cook, District Attorney, William K. Wynne, Jr., Assistant District Attorney*, for appellee.