A99A1457. MULLINS et al. v. THE STATE.
(525 SE2d 770)

SMITH, Judge.

Jimmy Wayne Mullins and Kimberly Carmela Mullins were charged in a two-count indictment with possession of amphetamines with intent to distribute and possession of less than an ounce of marijuana. Both were found guilty by a jury, and they appeal, alleging that the State failed to prove an adequate chain of custody for the contraband seized from their home and that the trial court erred in denying their motion for a mistrial based upon juror misconduct. Although we find that the State proved an adequate chain of custody, we conclude that a mistrial should have been declared, and we therefore reverse.

1. The Appalachian Drug Task Force executed a search warrant on the home of Jimmy and Kimberly Mullins on January 10, 1997. Agent John Cagle found Jimmy Mullins in the bathroom of the house trying to flush several plastic bags down the toilet. Agent Cagle was able to retrieve these bags and seize the contraband. He initialed the evidence bags and turned them over to Agent Shane Henson at the scene. Henson placed them, along with other items seized from the home, including marijuana, electronic scales, plastic "corner" baggies, a can or jar of Fruit Fresh, and a smoking pipe, into the trunk of his vehicle and locked the trunk. Henson testified that he first placed the evidence in the secured evidence locker at the office of the Appalachian Drug Task Force in Dawson County and that he later carried it personally to the Georgia Bureau of Investigation crime lab in Decatur for testing. At trial, Henson identified State's Exhibits 1 and 2 as the samples he took from the Mullinses' home and eventually delivered to the crime lab.

Unaiza Ali, a forensic chemist at the crime lab, testified that she received State's Exhibit 1 from her supervisor, Mark Burns, on May 26, 1998. The sample had been taken from the lock box by Lonnie Jones, who was then employed at the crime lab as a forensic chemist, and it was analyzed by Jones. Because Jones was no longer employed at the crime lab, the prosecutor requested that the sample be analyzed again. Ali analyzed the sample anew, and she identified it as amphetamine.

Ali testified that when she received the evidence bag, it was not sealed but was stapled shut. She stated that it bore a "unique crime

lab number" corresponding to the case and she had no concern that the sample might have been mixed up, tampered with, or contaminated.

In two enumerations, the Mullinses contend the trial court erred in allowing State's Exhibit 5, the laboratory report, into evidence and in failing to strike Ali's testimony. They contend the chain of custody was deficient based upon the failure of Jones, the original testing chemist, to testify, even though the laboratory report included his findings; the failure to seal the sample between the two analyses; and the large discrepancy in the report between the weight of the sample as found by Jones and Ali. For several reasons, we do not agree that the chain of custody was materially deficient.

First, when the State wishes to introduce evidence of a fungible nature, its burden is simply to show that the evidence is the same as that seized and that it has not been tampered with or substituted. *Scott v. State*, 227 Ga. App. 900, 901 (2) (490 SE2d 208) (1997). The State need not rule out every possibility of tampering, but the "circumstances must establish reasonable assurance of the identity of the substance. [Cit.]" *Staples v. State*, 209 Ga. App. 802, 805 (5) (434 SE2d 757) (1993).

The State's burden was discharged in this case. The State need not establish a "perfect" chain of custody for evidence within the crime lab itself. Here, as in *Scott*, the crime lab employee who originally received and analyzed the sample did not testify; here, as there, the technician who testified received the sample from her superiors. Id. at 900 (2). We held that the chain of custody shown was sufficient. The Mullinses offered no evidence of tampering. A discrepancy in weight was shown in *Staples*. But here, as in *Staples*, the possibility of complete substitution was rebutted by testimony concerning procedures used to identify and store evidence. Id. at 806 (5).

Second, the fact that the sample was stapled but not sealed goes to the weight of the evidence and not its admissibility. "Where there is only a possibility of tampering, substitution, or misidentification, it is proper to admit the evidence and let what doubt remains go to its weight." (Citations and punctuation omitted.) *Staples*, supra.

Third, any issue with regard to the weight discrepancy has been waived, because it was not raised at trial. The same is true of the issue the Mullinses raise on appeal regarding Ali's receipt of the evidence from outside the crime lab prior to her analysis.[1] A party may

---

[1] In addition, this "issue" is unsupported by the record. Appellants argue that the chain of custody is clouded by a notation in the lab report that prior to its analysis by Ali, the evidence was received from "T. Pitts," whose identity is unknown, of the Dawson County district atttorney's office, where the drug task force was located. But the report states only that a *request* was received from Pitts to reanalyze the evidence and not, as urged by appellants, that the *evidence* was received from Pitts.

not during trial remain silent concerning what he believes to be an error or injustice and hope to complain later if the verdict is not favorable. See, e.g., *Anthony v. State*, 236 Ga. App. 257, 258 (1) (511 SE2d 612) (1999). The trial court did not err in admitting the lab report or in allowing the testimony of Ali.

2. The Mullinses' remaining enumeration concerns an instance of alleged juror misconduct. The record shows that during a court recess, two jurors standing in the hallway were approached by an acquaintance with no connection with this trial. Their conversation was overheard and reported to the trial judge. After the recess, the trial judge took sworn testimony from the three participants in the encounter.

The acquaintance denied talking to the two jurors about anything connected to the trial, and the two jurors swore likewise. The judge, puzzled by the discrepancy between what had been reported to him and this testimony, then questioned defense counsel, who related that several witnesses informed him they heard the acquaintance tell the two jurors that the defendants would not be in court if they were not guilty, and they heard one juror agree.

The trial court requestioned the acquaintance, who reported that if he did make that comment he did not recall it. Upon requestioning, however, the two jurors admitted hearing their acquaintance make the comment related to defense counsel. But they steadfastly denied replying to the comment. The judge inquired of the jurors whether their acquaintance's comment would in any way affect their ability to decide the case based upon the evidence presented, and both replied that it would not. The defense moved for a mistrial, which was denied.

After the two jurors were returned to the jury room, Kimberly Mullins was sworn and testified that she heard one juror reply to the acquaintance's remark. She stated that when the acquaintance told the two jurors the defendants would not be in court if they were not guilty, one juror replied, "Yeah, I know." The defense again moved unsuccessfully for a mistrial. When the jurors returned, the trial court admonished them that if they heard anything during the break, they were to disregard what they heard and decide the case solely upon the evidence presented in court.

The trial proceeded without further incident until the close of evidence. Shortly before the charge conference, defense counsel placed in the record that he knew the court had ruled on his motion for mistrial, but that he had requested that the court remove the two jurors involved in the incident. The trial court acceded to this request, finding specifically that the jurors did nothing wrong "but out of an abundance of caution on behalf of your clients to protect the integrity of their trial by jury," only after the defense agreed to pro-

ceed with just ten jurors.

On appeal, the Mullinses contend that a mistrial should have been declared and that the trial court abused its discretion in failing to do so. We must agree. "When irregular juror conduct is shown, there is a presumption of prejudice to the defendant, and the prosecution carries the burden of establishing beyond a reasonable doubt that no harm occurred." (Footnote omitted.) *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997). To upset a jury verdict, the misconduct must have been "so prejudicial that the verdict is deemed inherently lacking in due process." (Punctuation and footnote omitted.) Id.

In this case, we find no evidence in the record that the State met its burden of establishing that no harm occurred. This case is unlike those in which we have found that the substance of the extrajudicial communication was established without contradiction and the facts themselves established lack of prejudice to the defendant. See, e.g., *Sims v. State*, 266 Ga. 417, 419-420 (3) (467 SE2d 574) (1996) (juror statements to each other did not involve extrajudicial information or demonstrate they were deliberating or attempting to persuade each other); *Holcomb*, supra. Here, testimony regarding whether the juror responded to the acquaintance's remark was in conflict. The State did not establish whether the two jurors involved discussed the matter with the other jurors; the remaining jurors were not questioned.

We must decide, therefore, whether the incident was so prejudicial that the jury's verdict was tainted.

> The decision whether any unauthorized statement, communicated to the jury either individually or as a group, is so prejudicial as to warrant a mistrial is in the discretion of the trial court. Some of the factors and circumstances to be reviewed in determining whether the trial court abused its discretion in denying the motion for mistrial include the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.

(Citations and punctuation omitted.) *Cooke v. State*, 230 Ga. App. 326, 327 (496 SE2d 337) (1998). The question presented here is a close one, but we conclude that under these particular facts and circumstances, the misconduct was so prejudicial that a mistrial was warranted, and the trial court erred in failing to declare one.

The statement related to the defendants' guilt or innocence, the ultimate issue for jury resolution. The testimony was in conflict as to whether one of the jurors indicated that he, too, had predetermined the defendants' guilt. The State did not establish that this view had

not been transmitted to the rest of the jury. And the very fact that the jurors first denied even hearing the remark placed the defense in the unenviable position of contradicting a sworn statement by the jurors before the jurors reluctantly admitted that the defense allegation was true, even in part. Although the two jurors did not participate in the verdict, we conclude that possible personal resentment on their part after having been contradicted and forced to change their testimony may very well have contributed to the verdict. The defense's agreement, as a last resort, to proceed with a jury of ten precisely to avoid such contamination does not constitute a waiver of the right to raise this issue on appeal. Under these circumstances, a mistrial was "essential to preserve [the Mullinses'] right to a fair trial." (Citation and punctuation omitted.) *Milton v. State*, 232 Ga. App. 672, 676 (503 SE2d 566) (1998).

*Judgment reversed. Johnson, C. J., Pope, P. J., and Ellington, J., concur and concur specially. Blackburn, P. J., Eldridge and Barnes, JJ., dissent.*

JOHNSON, Chief Judge, concurring specially.

I fully concur with the majority opinion, but write separately to discuss the state's failure to meet its burden of proof in this case of improper jury contact.

A defendant is entitled to a trial by a jury untainted by improper influences, and when there has been an improper communication with a juror, the state bears the burden of proving beyond a reasonable doubt that the communication was not harmful to the defendant.[2] In determining if the state has met its burden, the trial court focuses on, among other things, whether there was an attempt to discuss the merits of the case with the juror or to exert any influence upon the juror.[3]

During a break in the trial of Jimmy and Kimberly Mullins, jurors Pirkele and Grizzle were standing in a courthouse hallway when an acquaintance, William Gray, approached them and said that the defendants would not be there if they were not guilty. The trial judge was informed of the conversation. When he questioned Pirkele and Grizzle about the conversation, they first denied that Gray had said anything about the case, but when confronted with the fact that there were witnesses to the conversation, they both admitted that Gray had made the improper comment about the Mullinses' guilt. Nevertheless, they told the judge, the comment would not affect their ability to decide the case based only on the evidence. The

---

[2] *Lockridge v. State*, 260 Ga. 528, 529 (397 SE2d 695) (1990); *Towler v. State*, 188 Ga. App. 43, 44 (2) (372 SE2d 242) (1988).

[3] *Head v. State*, 191 Ga. App. 262, 264 (4) (381 SE2d 519) (1989); *Towler*, supra.

judge twice asked the state's prosecutor if he had anything to offer, and both times he said that he did not. The judge then denied the Mullinses' motion for a mistrial.

Did the trial court erroneously conclude that the state had carried its burden of proving beyond a reasonable doubt that Gray's improper communication with the two jurors was not prejudicial to the Mullinses? I believe that the court did err because, on its face, the communication was about the merits of the case and appeared to be an attempt to influence the opinion of the two jurors about the Mullinses' guilt. Moreover, those two jurors initially misinformed the court that there had been no improper communication before admitting that it had occurred and then claiming that they would not be influenced by it. And when given the chance to make some showing about the prejudice of the communication, the state offered nothing.

In *Lockridge v. State*,[4] the Supreme Court held that the state had not carried its burden of showing that the defendant was not harmed where a deputy sheriff improperly remarked to a juror that the defendant was guilty. And in *Towler v. State*,[5] we ruled that the state had not met its burden of showing no harm where the jury foreperson's mother, a court employee, told the foreperson that someone at work had said that the foreperson was holding out against a guilty verdict and was going to let a child molester go free. Likewise, in the instant case the state failed to overcome the presumption of harm and prove beyond a reasonable doubt that the Mullinses were not prejudiced by Gray's improper remark about their guilt. The conclusive claims of jurors Pirkele and Grizzle that they were not influenced by the remark is insufficient to prove lack of harm.[6] The trial court therefore should have granted the Mullinses' motion for a mistrial.

The harm of the court's error in denying the mistrial motion was exacerbated when the Mullinses agreed to have Pirkele and Grizzle removed from the jury and to proceed with a jury of only ten members. While defendants can waive their constitutional right to be tried by a jury of 12,[7] they should not be forced into such a waiver because of an error by the court. Here, after the court's error in finding that the state had proved beyond a reasonable doubt that there was no harm from the improper juror communication by Gray, the Mullinses had the unenviable choice of being tried either by a tainted jury of twelve or by a jury of only ten people. The trial court's error was not cured, and in fact led to further error, by putting the Mul-

---

[4] Supra at 529-530.
[5] Supra at 45.
[6] See *Lamons v. State*, 255 Ga. 511, 513 (340 SE2d 183) (1986).
[7] *Baptiste v. State*, 190 Ga. App. 451, 453 (2) (379 SE2d 165) (1989).

linses in a position where they had to choose between the valuable rights of either an untainted jury or a 12-person jury.[8]

I therefore agree with the majority's conclusion that the Mullinses' convictions must be reversed because of the trial court's refusal to grant a mistrial after the state failed to prove that the improper juror communication was harmless.

I am authorized to state that Presiding Judge Pope and Judge Ellington join in this concurrence.

ELDRIDGE, Judge, dissenting.

What is the real basis for reversal here? The Mullinses made *three* motions related to jurors Pirkele and Grizzle. One motion was for mistrial and was properly denied because, at the time it was made, the only evidence before the trial court was the jurors' statements of impartiality. The second motion was for mistrial and is waived because it was not renewed after curative instructions were given. And the third motion was to remove Pirkele and Grizzle, and that motion was granted.

However: (1) the special concurrence reverses because "the state failed to prove that the improper juror communication was harmless"; and (2) the majority reverses because of a *possible* improper communication by Pirkele or Grizzle to the rest of the venire which "may very well have" contributed to the verdict. In my view, neither position withstands scrutiny.

1. Special Concurrence:

During a trial recess, a third party, Gray, made an unsolicited comment to jurors Pirkele and Grizzle that the defendants would not be there if they were not guilty. Before recess was over, defense counsel brought it to the court's attention, and the trial court immediately brought Gray, Pirkele, and Grizzle into court for a hearing on the matter.

The first question to the jurors was whether Gray had talked to them about the *case*:

[Trial court:] Mr. Grizzle, do you remember any comment he made about the case?
[Grizzle:] No, sir, not about the case, he didn't, Judge. He sure didn't.
[Trial Court:] Did you hear anything, Mr. Pirkele about the case?
[Pirkele:] No, sir.

---

[8] See *Childress v. State*, 266 Ga. 425, 436 (4) (467 SE2d 865) (1996) (court committed grave error by forcing defendant to choose between forgoing admission of relevant evidence and testifying before deciding if his testimony was needed).

The jurors were then told the comment was about the defendants' guilt or innocence — not about the facts of the case: "[Defense counsel:] Mr. Gray, I believe, told the jurors that they wouldn't be here, the defendants wouldn't be here today if they weren't guilty, and Mr. Grizzle acknowledged that fact." Grizzle unhesitatingly admitted hearing that comment: "[Trial court:] Mr. Grizzle, did you hear that? [Grizzle:] Yes, sir, I did." Pirkele and Grizzle then volunteered the following — unasked:

[Pirkele:] Yes, I heard it.
[Grizzle:] But I didn't make a comment when he said it.
[Trial court:] You didn't comment back?
[Grizzle:] No, sir, I sure didn't.

The trial court asked both jurors if Gray's improper comment would influence their decision:

[Trial court:] Mr. Gray's comment, is that going to affect you in any way, your ability to listen to the evidence in this case and decide this case based upon the evidence presented to you, rather than anything you heard outside?
[Grizzle:] No, sir, it won't, Judge. Sure won't.
[Trial court:] Mr. Pirkele, how about you?
[Pirkele:] No, sir. It sure won't.

It was at this point defense counsel made his first motion — when there was no evidence before the court of anything other than (a) Gray made the improper comment and (b) Pirkele and Grizzle could remain impartial despite the comment: "Your Honor, I move for a mistrial at this point. I believe the jury has been improperly tainted and I believe it will cause reversible error." The trial court denied the motion.

(a) The trial court believed the jurors' assertions of impartiality. The special concurrence (and the majority) may not believe them and may think the jurors "initially misinformed the court," but the trial court did not see them or their voir dire responses in that light. The trial court found them "honest." "A conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference." *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998). The trial court believed the jurors. And it was the trial court's credibility decision to make, not ours. The trier of fact is the exclusive judge of the credibility and weight to be accorded the evidence. *Harris v. State*, 155 Ga. App. 530 (1) (271 SE2d 668) (1980).

At this point, everyone agreed that the improper comment was made. But at the time the defense made the initial motion for mis-

trial, the evidence was that (i) neither juror had responded to the improper comment; (ii) the improper comment did not affect either juror; and (iii) they both could decide the case based on the evidence presented. Accordingly, there was no harm to the defendants established by the fact the comment was made, since it would not affect the jurors. *Butler v. State*, 270 Ga. 441, 445 (511 SE2d 180) (1999); *Davidson v. State*, 231 Ga. App. 605, 612 (7) (499 SE2d 697) (1998).

(b) The special concurrence asserts — wrongly — that "[t]he conclusive claims of jurors Pirkele and Grizzle that they were not influenced by the remark is insufficient to prove lack of harm." That is not the law. The case that the special concurrence cites, *Lamons v. State*, 255 Ga. 511, 513 (340 SE2d 183) (1986), is an extraordinary one in which a juror telephoned the chief prosecuting police officer during an overnight trial recess and developed a "confidential relationship" of "trust" with him. It was only "[i]*n these circumstances*, a conclusive statement by the juror that she was not influenced is insufficient to prove lack of harm." (Emphasis supplied.) Id. Otherwise, a conclusive statement of impartiality from a juror *is* sufficient to show lack of harm. See *Pruitt v. State*, 270 Ga. 745, 755 (22) (514 SE2d 639) (1999); *Speed v. State*, 270 Ga. 688, 694 (26) (512 SE2d 896) (1999); *Butler v. State,* supra at 445; *Davidson v. State*, supra at 612. We do not have the extraordinary circumstances of *Lamons* before us here, and the trial court was entitled to rely on the jurors' statements of impartiality.[9]

(c) The special concurrence also asserts that the State failed to meet its burden to establish lack of harm because "when given the chance to make some showing about the prejudice of the communication, the state offered nothing." However, there was nothing more to offer. A juror's statement that the improper communication will not influence his or her decision *meets* the burden the State is to carry: "The evidence establishes that the improper communication in this case did not affect the impartiality of the jurors, and the trial court therefore did not err by denying [the Mullinses'] motion for mistrial." *Pruitt v. State*, supra. No harm has been shown by the fact the trial court, not the State, conducted the voir dire of Pirkele and Grizzle. The State is not required to *re-ask* the same question just for the sake of asking, when lack of harm has already been established by the evidence. "Because the *defendant* has failed to show how he has been prejudiced by the allegedly improper remark in the case at bar,

---

[9] I cannot help but express my concern about the tremendous amount of damage that can be done to the law by ignoring qualifying language and taking out of context a holding like "a conclusive statement by the juror that she was not influenced is insufficient to prove lack of harm." In fact, in most cases, an affirmative statement of impartiality is all the proof that is available and that is all the proof that is required. See, e.g., *Speed v. State*, supra.

we find no abuse of discretion under the circumstances of the present case." (Emphasis supplied.) *Jones v. State*, 185 Ga. App. 649, 652 (3) (366 SE2d 144) (1988).

Since the evidence at the first motion for mistrial established that the improper communication in this case did not affect the impartiality of the jurors, the State's burden was met, and the trial court did not err by denying the Mullinses' motion. *Pruitt v. State*, supra at 755. The special concurrence's determination to the contrary is, to my mind, incorrect.

2. Majority Opinion:

(a) After Pirkele and Grizzle returned to the jury room, defense counsel perfected the record on this issue. Counsel put up defendant Kimberly Mullins who testified, that, in response to Gray's improper comment:

[Mullins:] The one in the gray shirt or the green shirt, whatever his name, Mr. Pirkele, he said, "Yeah, I know."
[Trial court:] The guy in the green shirt, the younger fellow?
[Mullins:] Yes, sir.
[Trial court:] That's not Mr. Pirkele. We got a problem there. Okay. Anything else, Mr. Cox?

It was at this point defense counsel made his second motion, asking that "the entire panel, be struck based on conversations which took place outside the courtroom." Defense counsel also claimed a brand new ground for mistrial, i.e., *possible* prejudice because of the hearing itself, since Pirkele and Grizzle were present at the hearing and defense counsel had "indicated that [Grizzle] had spoken."

The trial court denied the second motion for mistrial, finding that the jurors did not respond to Gray's comment: "I don't find that they did do anything wrong. In fact, I specifically find that they did not do anything wrong." Thereafter, the trial court gave curative instructions to the entire venire to disregard any comments that they may have heard during break and to decide the case based only on evidence from the witness stand. Defense counsel did not renew the motion for mistrial following the curative instructions.

(i) Because Mullins did not renew her motion for a mistrial after this curative instruction, she failed to preserve this alleged error for our review. *Ward v. State*, 234 Ga. App. 610, 611-612 (507 SE2d 506) (1998).

(ii) Waiver aside, there was no error. "Where the trial court receives evidence that is conflicting as to irregularities in the conduct of the jury, the appellate court will not reverse unless the trial court has abused its discretion." (Citation and punctuation omitted.) *Colantuno v. State*, 262 Ga. 830, 831 (1) (426 SE2d 563) (1993).

Here, the trial judge did not believe defendant Mullins' claim that a juror responded "Yeah, I know" to Gray's comment. That was the court's right as trier of fact. Again, the trier of fact is the exclusive judge of the credibility and weight to be accorded the evidence. *Harris v. State*, supra at 530. Evidence of record supports the trial court's credibility determination in that (1) the jurors emphatically denied making any response to Gray's comment; (2) defense counsel's wife did not hear any juror response although she heard Gray's comment; (3) defendant Mullins who heard the alleged response had an obvious interest in the outcome of the motion; and (4) Mullins had "a problem" identifying which juror even made the alleged response.

"[T]he trial court's factual findings and credibility determinations will be upheld on appeal if there is any evidence to support them." *Kenerly v. Bryant*, 227 Ga. App. 746, 747 (1) (490 SE2d 454) (1997). With evidence to support the trial court's credibility determination that no response to Gray's comment was ever made, the majority cannot simply choose to find "testimony regarding whether the juror responded to [Gray's] remark was in conflict" and use such finding as a basis for reversal.

Since no evidence showed that either Pirkele or Grizzle held a view of "predetermined guilt," such view could not be transmitted to the rest of the jury, as the majority fears.

(iii) As to defense counsel's motion for mistrial because of possible prejudice resulting from the hearing itself, " '[o]ne cannot complain of trial procedure utilized by the trial court which his own trial tactics or conduct procured or aided in causing.' " *Davis v. State*, 225 Ga. App. 564, 570 (8) (484 SE2d 284) (1997); *Holcomb v. State*, 268 Ga. 100, 103 (485 SE2d 192) (1997). To hold otherwise would be to condone a practice where defense counsel can request to voir dire a juror regarding impartiality and then achieve the removal of the juror, not through any answer demonstrating partiality, but because the very process of voir dire — requested by counsel — may have "prejudiced" the juror against the defense. This is an absurd result.

Since no evidence showed jurors Pirkele and Grizzle held any bias or prejudice because of the hearing or the statements made therein, we cannot assume, as the majority states, *"possible* personal resentment" and reverse. "[A] valid conviction is not otherwise vitiated unless the defendant was *actually* prejudiced by the communication." (Emphasis supplied.) *Jones v. State*, supra at 651 (3). Speculation will not do.

(b) At the conclusion of the case and before jury deliberations, defense counsel asked the trial court to remove Pirkele and Grizzle. The trial court granted defense counsel's request based on the defendants' stipulation that they would proceed with ten jurors. Pirkele and Grizzle were removed. They did not participate in jury

deliberations or the return of the verdict. The trial court instructed the jury that the two jurors were excused because of innocent contact from a third party and that the jurors had done nothing wrong. Prior to instructing the jury, the trial court reviewed the charge with defense counsel and asked, "Is there any problem with that, Mr. Cox?" Defense counsel replied, "No problem."

(i) The defense got what it wanted. Counsel made no other request. Defense counsel agreed with the trial court's charge to the jury to mitigate any possible "taint" from the removal of the two jurors. Counsel never requested removal of the entire panel because of, as the majority puts it, "possible personal resentment" communicated to the rest of the venire which "may very well have contributed to the verdict."

(ii) It was not the State's burden to prove that an improper communication between the two jurors and the rest of the venire was NOT made. We do not require a party to prove a negative. "The burden of proving the absence of harm shifts to the state only after an irregularity is shown." *Davitt v. State*, 232 Ga. App. 427, 428-429 (3) (502 SE2d 300) (1998). If, as the majority states, the reversible irregularity in this case is an improper communication between the two jurors and the rest of the venire, it was the defense's burden to prove that such improper communication was actually made. The State is not required to prove the absence of harm in a communication that was never proved to exist.

In sum, the special concurrence reverses because the State failed to prove that Gray's improper communication was harmless, despite the fact the both jurors asserted that the improper communication did not affect their impartiality and the trial court believed their affirmative assertions, and the majority reverses because of a possible improper communication by Pirkele or Grizzle to the rest of the venire which "may very well have" contributed to the verdict — a communication for which there is absolutely no evidence. Since I cannot agree with either of these grounds for reversal, I respectfully dissent.

I am authorized to state Presiding Judge Blackburn and Judge Barnes join in this dissent.

BARNES, Judge, dissenting.

I respectfully dissent from the majority and join Judge Eldridge in Division (2) (b) (i) of his dissent, in which he notes that the defendants in this case received exactly what they asked for when the trial court removed the two jurors who were questioned about an improper contact. In granting the defendants' request to remove the two jurors, the trial court said it was doing so "to remove any possibility of error." After asking the defendants if they agreed to this

action and receiving affirmative responses, the court said, "We will remove those two jurors. Now, anything else?" Defense counsel responded, "No." I would therefore conclude that the defendants waived any error in the trial court's failure to grant a mistrial. See *Cobb v. State*, 236 Ga. App. 265, 269-270 (4) (511 SE2d 522) (1999).

DECIDED NOVEMBER 19, 1999 —
RECONSIDERATION DISMISSED DECEMBER 16, 1999.

*Husby, Myers & Stroberg, Roland H. Stroberg*, for appellants.
*N. Stanley Gunter, District Attorney, Lynn Akeley-Alderman, Assistant District Attorney*, for appellee.