## A11A1982. FULLER v. THE STATE.
### (722 SE2d 453)

ANDREWS, Judge.

On appeal from his conviction for aggravated child molestation and child molestation, Charles Fuller argues that the trial court abused its discretion when it denied his motion for mistrial concerning a juror's approach to and conversation with the victim during a lunch break. We agree and order a new trial.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the record shows that in May 2005, when the victim was 12 years old, her stepfather's brother, Charles Fuller, entered the victim's bedroom, touched her vagina, and penetrated it with his penis. Charles also put his mouth on the victim's privates. The victim's stepfather, James Fuller, participated in the attack. During a previous incident, Charles had held a knife to the victim's throat and told her that he would kill her if she told anyone about the assaults.

James and Charles Fuller were charged with rape (Count 1) and aggravated child molestation (Count 2) concerning the penetration and oral sex; Charles alone was charged with child molestation (Count 3) concerning the genital touching. A jury found Charles guilty of the lesser included offense of child molestation as to Count 1 as well as the aggravated child molestation charged in Count 2. He

---

[13] *Green v. State*, 281 Ga. 322, 323 (2) (638 SE2d 288) (2006).

was acquitted of Count 3. Fuller's motion for new trial was denied.

1. The evidence outlined above sufficed to sustain Fuller's conviction for child molestation and aggravated child molestation. See OCGA § 16-6-4 (a), (c) (defining child molestation and aggravated child molestation); *Jackson*, supra.

2. Fuller argues that the trial court erred when it denied his motion for mistrial concerning a juror's misconduct. We agree.

The record shows that after the State rested its case, the trial court indicated that it would take a break for lunch. The trial court instructed the jurors not to "allow anyone to discuss this case in your presence" nor to discuss the case amongst themselves. After the jury was excused, Fuller moved for a directed verdict, which was denied as to Counts 1 and 2 but reserved as to Count 3. Fuller then indicated that he had not yet decided whether to present evidence.

The prosecutors were eating lunch at a café when they saw a juror, who was sitting at a table nearby with three other jurors, get up from her table, approach the victim, who was sitting at another table, and say something to her. One of the prosecutors approached the juror and told her that she was not allowed to talk to the victim. The trial court was informed of these events on the parties' return to court and examined the juror outside the presence of the rest of the jury as follows:

> Q. [D]o you remember who you spoke to?
> A. I can't recall her name but I know her.
> Q. Do you know what you said?
> A. Oh yes.
> Q. What did you say?
> A. I said heh, honey, I said keep your head up, I said I'm so proud of you.
>
> . . .
>
> Q. [D]id you understand that you were not supposed to speak to anyone in this case?
> A. Yes, I did.
> Q. Why did you do that?
> A. I don't know. My heart was kinda filled at that time for her. And I thought maybe she was ashamed, you know, and that's why I told her, hold your head up.

When the trial court asked the juror whether she was prejudiced about the case, she said that she was not; when asked whether she could reach a fair and impartial verdict, she said she could; when asked whether she had "just [been] feeling sorry for a child," she said, "Yes, yes, yes."

Fuller's counsel then asked the trial court to pose specified questions on Fuller's behalf, which it did as follows:

Q. Have you understood the instructions I've given the jurors throughout the course of this trial in terms of don't discuss the case among yourselves and that sort of thing?

A. Yes, sir.

Q. You haven't discussed this with any other jurors, have you?

A. No, unh-unh.

Q. [Y]ou haven't reached any conclusions about the guilt or innocence of the defendant at this time, have you?

A. Oh, no, oh, no.

Q. And are you certain that you can upon hearing the instructions from the court and the evidence you've heard and any other evidence be fair and impartial?

A. Oh, yes. . . .

Q. Were you with other jurors when you made this statement to this witness?

A. No, I wasn't. I was getting out food.

Q. All right, other jurors weren't right there with you?

A. No, no, no, no.

Q. Have you and other jurors discussed any of the evidence in this case including the [victim's] testimony and whether or not to believe her?

A. No, none whatsoever.

Q. Have you formed any opinion at this time as to whether the child was telling the truth or whether or not you would believe her? Have you formed any opinion as to that?

A. Not at this time.

Fuller moved for a mistrial on the grounds that the other jurors must have seen the other juror approach and speak to the victim and that the juror's comments established that she had credited the victim's testimony concerning the attacks at issue. Fuller also noted that no alternate had been named and that he would not accept a verdict from a jury of less than 12. After further argument, the trial court denied the motion.

OCGA § 15-12-164 mandates that a juror in a felony trial must be asked whether he or she has, "for any reason, formed and expressed any opinion in regard to the guilt or innocence of the accused," or has "any prejudice or bias resting on your mind either for or against the accused." Id. at (a) (1), (2). The statute also states

that "if a juror answers any of [these questions] so as to render him incompetent *or* if he is found to be so by the judge, he shall be set aside for cause." Id. at (c). See also *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002) (when a juror has expressed a bias, a trial court "must do more than 'rehabilitate' the juror through the use of any talismanic question" such as whether the juror can be impartial); *Ivey v. State*, 258 Ga. App. 587, 592 (2) (574 SE2d 663) (2002) ("lengthy and repeated" questioning of a juror was " 'more an instruction on the desired answer than a neutral attempt to determine the juror's impartiality' ") (citation omitted).

"When irregular juror conduct is shown, there is a presumption of prejudice to the defendant, and the prosecution carries the burden of establishing beyond a reasonable doubt that no harm occurred." *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997). To upset a jury verdict, the misconduct must have been "so prejudicial that the verdict is deemed inherently lacking in due process." (Punctuation and footnote omitted.) Id.; see also *Jones v. State*, 282 Ga. 47, 50 (3) (644 SE2d 853) (2007) ("the type of 'irregularity' that gives rise to . . . a presumption of prejudice involves juror misconduct that has the potential to injure a defendant's due process rights"). "[A]buse of discretion is the standard applied on appeal to a trial court's decision whether or not to replace a juror." *State v. Clements*, 289 Ga. 640, 645 (1), n. 5 (715 SE2d 59) (2011).

Well over a century ago, in *Shaw v. State*, 83 Ga. 92 (9 SE 768) (1889), the Supreme Court of Georgia reversed a trial court's denial of a defendant's motion for mistrial when the bailiff and jurors had attended an evening prayer meeting conducted by the prosecutor even in the absence of evidence that any discussion of the case took place there. As it did so, the Court expressed the law's concern for the isolation of a jury after its empanelment in a criminal case:

> [The law] contemplates that no outside influence shall be brought to bear on the minds of the jury, and that nothing shall occur outside of the trial which shall disturb their minds in any way; that the minds of the jury shall be entirely occupied with the consideration of the case which they are sworn to try.

Id. at 100. Thus in *Golden v. State*, 63 Ga. App. 765, 766 (12 SE2d 108) (1940), this Court relied on *Shaw* to hold that a trial court abused its discretion in failing to grant a motion for mistrial when the victim's widow approached a juror, shook his hand, and asked "how he and his wife were getting along." Id. at 766. The juror replied that "[they] were getting along all right." Id. This Court held that even though neither the trial judge nor the appellate court "can

know whether the conduct of the wife of the deceased . . . aroused [the juror's] sympathy for her and influenced his conduct," the juror committed harmful misconduct when he received and responded to this greeting. Id. at 768.

Citing *Golden*, we also granted a new trial in *Hendricks v. State*, 108 Ga. App. 259 (132 SE2d 845) (1963) (overruled on other grounds, *State v. Collins*, 201 Ga. App. 500 (411 SE2d 546) (1991)), in which a juror admitted to having lunch with a witness during the progress of the trial and where the witness testified that she had "probably" discussed the case with that juror before the trial. 108 Ga. App. at 259-260. Likewise, in *Lamons v. State*, 255 Ga. 511 (340 SE2d 183) (1986), the Supreme Court of Georgia granted a defendant a new trial when the chief prosecuting witness, a detective, admitted that he had developed a "confidential" and "unique" relationship with a juror who called him during trial to inform on her ex-boyfriend, even though their conversation had not touched on the case at hand. Id. at 512-513. Citing *Shaw*, the Court held that "a conclusive statement by the juror that she was not influenced [by the contact] is insufficient to prove lack of harm" to the defendant, such that even if the officer and the juror "acted with the best intentions," a new trial was necessary. Id. at 513. More recently, in *Mullins v. State*, 241 Ga. App. 553 (525 SE2d 770) (1999), this Court reversed a trial court's denial of a defendant's motion for mistrial where there was some evidence that one of two deliberating jurors had expressed agreement with an acquaintance's expression that the defendants "would not be in court if they were not guilty." Id. at 555 (2).

Here, and during a break in the proceedings but before the close of evidence, a juror initiated a conversation with the testifying victim in the case, such that the juror alone had access to the victim's reaction, silent or otherwise, to her expressions of support. See *Turpin v. Todd*, 268 Ga. 820, 823 (1) (c) (493 SE2d 900) (1997) (due process concerns are raised when communications to a jury are made outside the presence of defendant and his counsel). The trial court never asked the juror what the victim's response had been and also failed to examine the victim or the other three jurors, with the result that the record contains only one account — the wayward juror's — of what occurred. Even accepting the juror's account as well as the trial court's conclusion that she intended only to express sympathy for the victim, the juror's unauthorized contact with a witness was *intentional rather than accidental* (like the jurors' attendance of the prayer meeting in *Shaw*); established a *personal relationship* with that witness (like that between the widow and juror in *Golden* and between the police officer and juror in *Jones*); and included statements reasonably construed as *expressing a judgment concerning the events at issue* (like the jurors' expressions of agreement with the

acquaintance's opinion in *Mullins*). Finally, there is no evidence to suggest that Fuller has waived his right to a verdict from an unbiased jury of 12. Compare *Mullins*, 241 Ga. App. at 562 (2) (a) (Eldridge, J., dissenting) (noting defendants' failure to renew their motion for mistrial after delivery of curative instruction concerning juror misconduct); id. at 564-565 (Barnes, J., dissenting) (noting defendants' failure to object after removal of offending jurors).

Under these circumstances, no rehabilitation of the juror was possible, and the State has failed to show that Fuller was not harmed by the misconduct. The trial court thus abused its discretion when it denied Fuller's motion for mistrial. *Lamons*, 255 Ga. at 512; *Mullins*, 241 Ga. App. at 556-557 (2); *Hendricks*, 108 Ga. App. at 260; *Golden*, 63 Ga. App. at 768. Compare *Jones*, supra, 282 Ga. at 50 (3) (defendant did not show prejudice where sick juror was attended to by physician who was also a witness in the case, and where there was "no discussion by anyone of the case on trial"); *Brown v. State*, 309 Ga. App. 511, 517 (3) (710 SE2d 674) (2011) (trial court did not abuse its discretion in denying motion for mistrial when juror's opinion as to defendant's guilt was not expressed to any other jurors and when offending juror was dismissed before opening statements); *Hodges v. State*, 249 Ga. App. 268, 270 (2) (547 SE2d 386) (2001) (trial court did not abuse discretion in denying motion for mistrial where juror's phone call to witness on night before witness's testimony did not concern the merits of the case, and when the witness "immediately told the juror he could not speak with her"); *Hudson v. State*, 166 Ga. App. 660, 661 (1) (305 SE2d 409) (1983) (one juror's allegation concerning another juror's contact with the victim was insufficient to show that the misconduct contributed to the conviction).

*Judgment reversed. Phipps, P. J., and McFadden, J., concur.*

DECIDED JANUARY 27, 2012.

*James C. Garner*, for appellant.

*L. Craig Fraser, District Attorney, Chad A. Pritchett, Assistant District Attorney*, for appellee.