A01A0480. HODGES v. THE STATE.
(547 SE2d 386)

BARNES, Judge.

A jury convicted Johnny Ben Hodges of cocaine possession with intent to distribute, and the trial court sentenced him to serve life in prison. He appeals, contending that the trial court erred in (1) denying his motions for directed verdict and for new trial because the evidence was insufficient; (2) denying his motion for mistrial due to juror misconduct; (3) allowing the State to introduce evidence of his bad character; (4) allowing the State to introduce evidence of statements he made to police; (5) allowing a recent graduate to testify as an expert in chemical testing; and (6) charging the Suggested Pattern Jury Instructions on intent. For the reasons that follow, we affirm.

Construed to support the verdict, the evidence revealed that, on February 5, 1999, a detective with the Baldwin County Sheriff's Department was watching Hodges' house from a field. The detective intended to wait until Hodges left and execute a search warrant of the house. He explained that he had a marked car waiting nearby to pull Hodges over and execute a search warrant of his person. On that day, however, the detective saw a man named Rodney Sanford drive up and talk to Hodges for a short time. Hodges went into the house, then came back out, and handed Sanford something. Sanford drove away, and the detective radioed the waiting marked car to pull him over.

The detective left his observation of Hodges' house and went to assist the officers in the marked car, who found almost two ounces of cocaine in Sanford's van. Sanford and his passenger were arrested for cocaine trafficking, and Sanford testified at Hodges' trial that

---

Hodges had given him the cocaine to sell, as he had two or three times previously.

The detective went back with his partner to observe Hodges' home the next week. When Hodges drove off, the partner remained behind to execute a search warrant on the house, and the detective followed him in an unmarked car. Hodges pulled into a driveway and stopped; the detective pulled in behind him, made him get out of his car, and executed the search warrant on Hodges. The detective found four bags of cocaine and more than $2,000 cash in Hodges' pocket and arrested him for possession with intent to distribute.

The partner executed the search warrant on Hodges' house. In his bedroom were a box of plastic sandwich bags, sandwich bag corners with white residue in them, inositol, and mannitol. The latter substances are typically added to cocaine before it is sold in order to increase its volume and thus increase its profitability.

Both the detective and his partner testified that, after he was taken to the booking room in the sheriff's department, Hodges asked them what he could do to help himself. In response the detective gave him his *Miranda* rights and told him that he would talk to him the next day. The next day, the detective and his partner met with Hodges in the detective's office and again told him about his right to remain silent, to have an attorney, and that anything he said could be used against him in court. He elected to discuss candidly his drug dealings, naming his supplier from whom he bought five to eight ounces every couple of weeks. He admitted the drugs in his pocket and the residue at his house belonged to him, the remainder of a large shipment from the previous week. He was just about to go out of business, he said, because he became frightened when Sanford was arrested for trafficking the week before.

1. The evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt Hodges' guilt of cocaine possession with intent to distribute. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hodges contends the trial court erred in not granting a mistrial due to juror misconduct. On the second day of trial, the State told the court that a juror called one of the State's witnesses the previous night. The witness, who is the county's chief detective and the evidence custodian, testified that the juror and her husband were close friends of his, and she called to express her pleasure at being selected to sit on the jury. At the time of the call, the witness had not testified, and there is no indication that the juror knew the detective would be a witness. The juror's husband is a drug agent in another county. She said that if the defendant was guilty, then she would find him guilty. The witness told her he could not talk to her, then immediately called the prosecutor to report the exchange. The juror also

testified about the brief conversation. In response to the trial court's questioning, she asserted that she could treat both the State and the defendant fairly and she was not influenced by her conversation with the witness, who would not speak to her. She added, "If I had to make a choice yesterday, I would have thought he was guilty[,] . . . but I haven't heard the evidence today." She reiterated that she could listen to and base her verdict on the evidence and be fair to both sides. Based on this testimony, the trial court did not remove the juror.

"There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred." (Citation and punctuation omitted.) *Henry v. State*, 265 Ga. 732, 738 (7) (a) (462 SE2d 737) (1995). Both witness and juror testified that neither discussed the merits of the case and that the witness immediately told the juror he could not speak with her. He reported the conversation to the prosecutor, who brought it to the court's attention at the first opportunity. A juror's unauthorized contact with another will not necessarily require a new trial if the two do not discuss the merits of the case. Id. Furthermore, "where the substance of the communication is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant." (Citation and punctuation omitted.) Id. at 738-739 (7) (a). The State rebutted the presumption of harm here, and we find no error.

The opinion in *Mullins v. State*, 241 Ga. App. 553, 555-557 (2) (525 SE2d 770) (1999), does not require a different result. In *Mullins*, the jurors were approached by an acquaintance who said the defendants would not be on trial if they were not guilty. The jurors initially denied to the trial court that they even had the conversation, although when requestioned they admitted that the acquaintance made the statement. Under "the particular facts and circumstances" of that case, we held that the State failed to meet its burden of establishing beyond a reasonable doubt that the defendants were not harmed. Id. at 556. In this case, no evidence contradicted the testimony of the juror and witness, who both agreed the conversation involved nothing substantive about the case.

3. Hodges asserts that the trial court erred in not granting a mistrial when the State twice introduced evidence of his bad character in violation of OCGA § 24-9-20 (b). That statute provides:

> If a defendant testifies, he shall be sworn as any other witness and may be examined and cross-examined as any other witness, except that no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue.

In the first instance, the State asked a detective on direct examination, "What was your first contact with this case?" The detective responded,

I couldn't say probably my first contact as far as knowledge-wise. As he stated — as Sergeant Myers stated earlier, I had been hearing about Ben Hodges for up to a year through different sources, reliable sources, telling me that Ben Hodges was a trafficker in cocaine.

Hodges objected and moved for a mistrial. After a bench conference, the trial court denied the motion but instructed the jury, "Ladies and gentlemen, disregard the last answer that this witness gave, and give it no consideration whatsoever in your deliberation." Hodges did not object or renew his motion for a mistrial after these curative instructions.

In the second instance, Hodges held the following exchange with the same detective on cross-examination, during a discussion about the cash Hodges had on him when he was arrested:

Q: Did you just not say that a week before he had gotten $2,000.00 in money?
A: I don't know whether he got $2,000.00 in money. I know he sold $2,000.00 in product.
Q: All right, sir.
A: And I know that that's not the first time he's sold cocaine.

Hodges again objected. After another bench conference, the trial court denied the motion but instructed the jury, "Ladies and gentlemen, disregard the last response of the witness and give it no consideration in your deliberation whatsoever." Again, Hodges did not renew his objection or ask for a mistrial after the curative instructions.

Because Hodges failed to object or renew his motion for a mistrial after these curative instructions, he failed to preserve the issue for appeal. *Jones v. State*, 221 Ga. App. 374, 375 (2) (471 SE2d 318) (1996). Consequently, this enumeration of error presents nothing for review.

4. Hodges alleges the trial court erred in admitting into evidence statements he made to the investigating detectives. At a *Jackson-Denno* hearing to determine the voluntariness of his statements, Hodges testified that no one ever gave him his *Miranda* rights, that he never told the detective he had been dealing drugs, and that the detective was lying in his testimony about Hodges' statement. The detective testified to the contrary and asserted that Hodges talked without hope of benefit or fear of injury. The trial court held that

Hodges was advised of his *Miranda* rights, understood them, voluntarily waived them, and gave his statement freely and voluntarily without hope of benefit or fear of injury.

"The trial court sits as the factfinder in a *Jackson-Denno* hearing, and its resolution of factual issues will be upheld by the appellate court unless it is clearly erroneous." (Citation omitted.) *York v. State*, 242 Ga. App. 281, 292 (6) (528 SE2d 823) (2000). Evidence that Hodges initiated the conversation with the officers and, "during the course of such initiated conversation, exercised a free and voluntary waiver of his rights" supports the trial court's conclusion. (Citation and punctuation omitted.) Id. The trial court did not err in allowing the State's witnesses to testify about Hodges' statements.

5. Hodges argues that the trial court erred in declaring one of the State's witnesses to be an expert in the field of drug identification because the witness was only twenty-four and had finished training only seven days before the offense occurred.

"Generally nothing more is required to entitle one to give testimony as an expert than that he has been educated in the particular trade or profession. . . . [Cits.]" (Punctuation omitted.) *Lindley v. State*, 225 Ga. App. 338, 340 (1) (484 SE2d 33) (1997).

> It lies in the trial court's sound discretion to decide whether a witness has such learning or experience in a particular art, science, or profession to be treated as an expert, or to be deemed prima facie an expert; the exercise of this discretion will not be disturbed unless manifestly abused.

(Citations and punctuation omitted.) *Smith v. State*, 210 Ga. App. 451, 452 (3) (436 SE2d 562) (1993).

Hodges has cited no authority for the proposition that a 24-year-old witness is too young to be an expert. Further, while the offense occurred in February 1999, the witness tested the 15.2 grams of cocaine in June 1999, after he had been working full-time at the crime lab for four months. He had a bachelor of science degree in chemistry, had undergone nine months of training, and as of trial had tested more than 1,200 substances at the Macon Crime Lab. We find no abuse of discretion in the trial court's finding that the witness was an expert in the field of drug identification.

6. Finally, Hodges argues that the trial court erred in giving the Suggested Pattern Jury Instruction on intent. The trial court charged the jury in the exact language of the pattern charge as follows:

> Intent is an essential element of any crime and must be proved by the State beyond a reasonable doubt. Intent may

be shown in many ways, provided you, the jury, believe that it existed from the proven facts before you. It may be inferred from the proven circumstances or by acts and conduct, or it may be, in your discretion, inferred when it is the natural and necessary consequence of the act. Whether or not you draw such an inference is a matter solely within your discretion. Criminal intent does not mean an intention to violate the law or to violate a penal statute, but means simply to intend to commit the act which is prohibited by a statute.

Hodges argues that the use of "inferred" twice and "inference" violates "the beyond a reasonable doubt requirement of OCGA § 24-4-5."

Our Supreme Court addressed this precise argument many years ago, approving the charge as a proper statement of the law. *Griffin v. State*, 230 Ga. 449, 452-453 (3) (197 SE2d 723) (1973). The trial court did not err in giving the charge.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 28, 2001 —
RECONSIDERATION DENIED APRIL 18, 2001 ▮▮▮▮▮▮▮▮

*Thomas J. Phillips, Jr.*, for appellant.

*Fredric D. Bright, District Attorney, Stephen A. Bradley, Assistant District Attorney*, for appellee.