## A03A0208. SMITH v. THE STATE.
(584 SE2d 29)

BARNES, Judge.

Toby J. Smith appeals his conviction for voluntary manslaughter, as a lesser included offense of murder, and the subsequent denial of his motion for new trial. He challenges the sufficiency of the evidence and also maintains that the trial court erred by not removing a tainted juror, admitting into evidence a concrete block, and also allowing evidence of Smith's prior convictions to be introduced even though the State did not provide adequate notice. Upon review, we affirm Smith's conviction.

On appeal, we do not weigh the evidence or resolve conflicts in the testimony; rather, we review the evidence in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979); *Herrington v. State*, 241 Ga. App. 326, 329 (2) (527 SE2d 33) (1999). So viewed, the evidence shows that on February 19, 2000, Elijah Collins was in an area of Glennville known as "the cut" with Smith's mother. A witness testified that the two were talking when Smith approached Collins and hit him in the head. The witness testified that Collins and Smith's mother had not been fighting prior to Smith's arrival.

Smith's mother and another witness, however, testified that Collins grabbed Smith's mother and told her to stay out of "the cut." When she pulled away, Collins reached into his pocket as if going for a weapon. They said that it was at that point that Smith approached, saw the altercation, and threw a piece of cinder block at Collins, killing him. Smith also testified that he was defending his mother when he threw concrete at Collins and did not intend to kill him. After the incident, Smith fled to Florida, but eventually returned to Georgia and turned himself in.

1. Pursuant to OCGA § 16-5-2 (a),

[a] person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Smith guilty beyond a reasonable doubt of the crime of voluntary manslaughter. *Jackson*, supra.

Contrary to Smith's contention, the jury was not required to believe that he acted in the defense of his mother. Under OCGA § 16-3-21, the use of force which is intended or likely to cause death or great bodily harm is justified if it is reasonably believed that such force is necessary to prevent death or great bodily injury to oneself or a third person. "The distinguishing characteristic between voluntary manslaughter and justifiable homicide . . . is whether the accused was so influenced and excited that he reacted passionately or whether the defendant acted simply to defend himself." (Citation and punctuation omitted.) *Johnson v. State*, 229 Ga. App. 586, 587 (1) (494 SE2d 382) (1997). It is for the jury to decide whether Smith reasonably believed that the use of deadly force was necessary. *Anderson v. State*, 245 Ga. 619, 623 (266 SE2d 221) (1980).

2. Smith maintains that the trial court erred by not removing one of the jurors. He argues that he made a showing of irregular conduct between the juror, who was the ex-husband of the prosecutor's wife, and the prosecutor, and the State failed to establish beyond a reasonable doubt that no harm occurred.

Before the opening statements, Smith complained that on the day after jury selection the prosecuting attorney was seen conversing with one of the jurors in the courthouse. Smith asked that the juror be recused because of the appearance of impropriety following the 15-minute conversation. The trial court held a hearing on the matter, at which the prosecutor testified that the men were discussing the juror's children, who attended a local private school. The prosecutor served on the school's board, and testified that the juror was explaining to him that he was withdrawing them from the school. The trial court denied the motion. Smith renewed the motion when the prosecutor's wife, the same juror's ex-wife, came into the courtroom during the trial. Smith expressed concern that her appearance could have some influence on her ex-husband, the juror. The trial court asked Smith if he wanted to question the juror about his concerns, but Smith declined. The trial court again denied the motion to recuse the juror.

"There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred." (Citation and punctuation omitted.) *Hodges v. State*, 249 Ga. App. 268, 270 (2) (547 SE2d 386) (2001). Even if this act could be considered juror misconduct, the prosecutor rebutted any presumption of harm. He testified that the conversation was not related to the trial and explained to the court the relationship he had with the juror. We also note that the trial did not start until approximately ten days after the conversation. "A juror's unauthorized contact with

another will not necessarily require a new trial if the two do not discuss the merits of the case." Id.

Further, even if there is irregular jury conduct, "this Court must conclude that the conduct was so prejudicial that the verdict is inherently lacking in due process [before reversing a conviction]." *Butler v. State*, 270 Ga. 441, 444 (2) (511 SE2d 180) (1999). Thus, the question is whether the juror's act of talking to the prosecutor was prejudicial to the point of rendering the verdict inherently without due process. Id. Smith has failed to show how this conduct was so prejudicial that it contributed to his conviction and made his trial fundamentally unfair. Id. at 445 (2).

3. 'Smith did not object to the trial court's ruling when a piece of cinder block found at the scene was admitted into evidence. Although he objected when the concrete block was tendered, he made no response to the court's ruling that the item was admitted. Smith "cannot submit to a ruling or acquiesce in the holding[ ] and then complain of the same on appeal. He must stand his ground." (Punctuation omitted.) *Garland v. State*, 256 Ga. App. 313, 318 (6) (568 SE2d 540) (2002). Accordingly, this issue is waived.

In any event, whether the cinder block was sufficiently authenticated as the actual cinder block that killed the victim is a question for the jury. *Thomas v. State*, 268 Ga. 135, 139 (10) (485 SE2d 783) (1997). Here, the investigating officer testified that he found the cinder block at the scene, the medical examiner testified that it could have caused the injury that produced the victim's death, and witnesses testified that Smith threw a piece of cinder block at the victim. Replicas of weapons used in the commission of a crime are generally admissible when it is undisputed that a similar weapon was used. *Stiles v. State*, 216 Ga. App. 308, 309 (2) (454 SE2d 189) (1995). Accordingly, there was no error.

4. The introduction of aggravating evidence in the sentencing phase is controlled by OCGA § 17-10-2, which requires the State to provide pretrial notice of its intent to introduce such evidence. OCGA § 17-10-2 (a) allows the State to introduce evidence in aggravation of punishment "provided that only such evidence in aggravation as the state has made known to the defendant prior to the defendant's trial shall be admissible." The purpose of the notice requirement is to give the defendant a chance to examine his record to determine if the convictions are in fact his, if he was represented by counsel, and any other defect which would render such documents inadmissible during the presentencing phase of the trial. *Demetrios v. State*, 246 Ga. App. 506, 510 (4) (541 SE2d 83) (2000).

The State served Smith's counsel with its notice of intent to use a previous conviction on December 10. The first day of trial was December 14. Although Smith argues that this was not prior to trial

because the trial actually started on December 3, the day the jury was selected, we cannot find, nor does he present, any authority for this proposition. In a jury trial, jeopardy attaches when a jury is impaneled and sworn, *Laster v. State*, 268 Ga. 172, 173 (1) (486 SE2d 153) (1997), and because notice was provided before that time, the State provided clear notice of its intent to use Smith's prior conviction in aggravation of sentencing as required by OCGA § 17-10-2. See *Sinkfield v. State*, 262 Ga. 239 (2) (416 SE2d 288) (1992).

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED JUNE 19, 2003 — 

*Phillips & Kitchings, Richard Phillips, Joseph C. Kitchings*, for appellant.

*J. Thomas Durden, Jr., District Attorney, Sandra Dutton, Assistant District Attorney*, for appellee.