## S12A0684. CHANCE v. THE STATE.
(728 SE2d 635)

CARLEY, Chief Justice.

Appellant Christopher D. Chance and his co-indictee Raymond Trey Sapp were separately tried for the malice and felony murder of Simpson Tyrone Cates and for other offenses. Appellant was found guilty of criminal attempt to possess cocaine and possession of a firearm during the commission of a crime, but the jury acquitted him of malice murder and was unable to reach a verdict on felony murder. On retrial, Appellant was found guilty of felony murder during the commission of criminal attempt to possess cocaine. The trial court entered judgments of conviction and sentenced Appellant to life imprisonment for felony murder, a concurrent five-year term for the drug offense, and a consecutive five-year term for the weapons offense. After Sapp's separate trial, he was convicted of the same offenses, the convictions for felony murder and the firearms count were affirmed on appeal, and the conviction on the drug charge was vacated. *Sapp v. State*, 290 Ga. 247 (719 SE2d 434) (2011). Although Appellant filed an untimely motion for new trial, the trial court granted an out-of-time motion for new trial, and Appellant filed an amended motion for new trial within 30 days thereafter. See *Fairclough v. State*, 276 Ga. 602, 603 (1) (581 SE2d 3) (2003). Compare *Hood v. State*, 282 Ga. 462, 463, fn. 1 (651 SE2d 88) (2007). That amended motion for new trial was denied, and Appellant filed a timely notice of appeal.[*]

1. Appellant contends that the evidence was insufficient and that the trial court therefore should have directed a verdict of acquittal on the felony murder count. Construed most strongly in support of the verdicts, the evidence shows that Appellant regularly purchased illegal drugs from the victim's cousin Carlos Pressley on a particular rural dirt road. After Pressley arranged for the victim to make a sale of cocaine to Appellant at the same location, Appellant and Sapp arrived there in a pickup truck and stopped next to the victim's vehicle. Appellant fatally shot the victim in the head with a shotgun through Appellant's open driver's side window. Although Appellant

---

[*] The crimes occurred on November 29, 2008, and the grand jury returned a joint indictment on February 12, 2009 and a re-indictment on March 15, 2010. The jury at Appellant's first trial found him guilty on April 24, 2010. The jury at his second trial found him guilty on June 11, 2010, and, on that same day, the trial court entered the judgments of conviction and sentences. The motion for new trial was filed on July 19, 2010, and the out-of-time motion for new trial was granted on September 14, 2011. The amended motion for new trial was filed on September 23, 2011 and denied on November 22, 2011. On the same day as that denial, Appellant filed the notice of appeal. The case was docketed in this Court for the April 2012 term and submitted for decision on the briefs.

testified that Sapp shot the victim, Sapp gave the opposite testimony, and the victim's DNA was found in bloodstains on the lower left side of Appellant's shirt. Appellant eventually surrendered to law enforcement after changing his clothes and concealing the murder weapon in a friend's vehicle.

Appellant argues that the inherent dangerousness required for felony murder is not present in the underlying felony of criminal attempt to possess cocaine, because the victim, and not Appellant, was the distributor of the cocaine, and because the shotgun was in Appellant's vehicle during hunting season for hunting purposes.

> "[T]he only limitation on the type of felony that may serve as an underlying felony for a felony murder conviction is that the felony must be inherently dangerous to human life. For a felony to be considered inherently dangerous, it must be ' "dangerous per se" ' or it must 'by its circumstances create a foreseeable risk of death.' 'In determining whether a felony meets that definition, this Court does not consider the elements of the felony in the abstract, but instead considers the circumstances under which the felony was committed.' " [Cit.]

*Chua v. State*, 289 Ga. 220, 228 (1) (b) (710 SE2d 540) (2011). By participating in a felony drug deal as the purchaser, Appellant was affirmatively choosing " 'to engage in a dangerous and potentially violent criminal activity.' " *Davis v. State*, 290 Ga. 757, 759 (2) (725 SE2d 280) (2012). See also *Smith v. State*, 290 Ga. 768, 771 (2) (723 SE2d 915) (2012). Thus, his criminal attempt to possess cocaine "was dangerous and sufficiently connected to the murder so as to also serve as an underlying felony for the felony murder conviction. [Cit.]" *Harris v. State*, 267 Ga. 435, 437 (1), fn. 2 (479 SE2d 717) (1997).

The evidence was sufficient for a rational trier of fact to find Appellant guilty beyond a reasonable doubt of all of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Sapp v. State*, supra at 249 (1). However, Appellant was erroneously sentenced on both felony murder and the underlying felony. "We therefore must vacate the separate judgment of conviction and sentence for criminal attempt to possess cocaine. [Cit.]" *Sapp v. State*, supra.

2. In his argument regarding the sufficiency of the evidence, Appellant further asserts that the trial court should have given his requested instructions regarding inherent dangerousness. However,

[t]he trial court was not required to give an instruction regarding foreseeable risk. In fact, "recent precedent from this Court clearly holds that a trial court's refusal to give an 'inherent dangerousness' instruction, even when it was requested, did not constitute error." [Cit.] Given our clear precedent that an instruction on inherent dangerousness is not required, we determine that the trial court's [failure to give Appellant's requests could] not constitute [reversible] error. (Emphasis omitted.)

*Davis v. State*, supra at 762 (5) (b). Although Appellant also cursorily complains of the trial court's responses to the jury's questions regarding felony murder, trial "counsel affirmatively approved of the trial court's handling of the issue. Any error was thus induced and any claim of error waived on appeal. [Cit.]" *Konecny v. State*, 307 Ga. App. 618, 619 (1) (705 SE2d 714) (2011).

3. Appellant contends that the trial court erred in failing to remove a juror who, after jury selection and before the panel was sworn, was telephoned by assistant district attorney Hank Syms and was asked to be in his wedding.

"When irregular juror conduct is shown, there is a presumption of prejudice to the defendant, and the prosecution carries the burden of establishing beyond a reasonable doubt that no harm occurred. . . . '(W)here the substance of the communication is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant.' " [Cit.]

*Jones v. State*, 289 Ga. 111, 117 (2) (d) (709 SE2d 773) (2011). "[S]ome irregularities are inconsequential. [Cit.] The decision whether to remove a juror from a panel lies within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. [Cits.]" *Pinkins v. State*, 243 Ga. App. 737, 741 (3) (534 SE2d 192) (2000). An unauthorized contact between a juror and a member of the prosecutor's office " 'will not necessarily require a new trial if the two do not discuss the merits of the case.' [Cit.]" *Smith v. State*, 261 Ga. App. 781, 783 (2) (584 SE2d 29) (2003).

Syms was not involved in the trial of this case. During jury selection, the juror stated that Syms was a longtime friend. On voir dire after the telephone call, the juror testified without contradiction that, when Syms found out about the jury duty, he told the juror that he could not really talk, asked the juror to be in his wedding, stated that he could not talk any more that week, and quickly terminated the

conversation. Syms promptly informed the prosecutor of the call. The juror further indicated that he could still be fair and impartial and decide the case based on the evidence. The very brief contact was immediately brought to the trial court's attention, and its purpose was wholly unrelated to Appellant's trial. *Pinkins v. State*, supra at 740-741 (3).

Thus, "[t]he record before us discloses no basis upon which to conclude that the trial court's failure to excuse this juror violated [Appellant's] right to an impartial jury or prejudiced his defense." *Pinkins v. State*, supra at 741 (3). Assuming that the conversation was improper, the prosecutor rebutted any presumption of harm, and Appellant has failed to show that the conduct rendered the verdict inherently without due process or was so prejudicial that it contributed to his conviction and made the trial fundamentally unfair. *Smith v. State*, supra at 782-783 (2). As the contact "was not an attempt to discuss the merits of the case or influence the juror, [A]ppellant was not harmed by the improper communication . . . ." *Jones v. State*, supra.

Accordingly, "[t]he trial court did not abuse its discretion in refusing to remove the juror." *Pinkins v. State*, supra.

4. Appellant also contends that the trial court erroneously granted a motion in limine made by the State to exclude certain demonstrative evidence. Appellant's proffer consisted of a series of photographs showing various possible reenactments of the homicide based on evidence indicating that the victim's driver's side door was open because its window could not easily be and was not lowered.

The "use of a reenactment is a matter for the trial court's discretion, [and] the party seeking to use it must show that it is a fair and accurate representation of the events sought to be depicted. [Cit.]" *Pickren v. State*, 269 Ga. 453, 455 (2) (500 SE2d 566) (1998). See also *Eiland v. State*, 130 Ga. App. 428, 429 (1) (203 SE2d 619) (1973). ·In every photograph, each vehicle had been placed in the same position, such that the driver's side doors were quite close. The trial court properly found that the proffer was speculative and assumed facts not in evidence, as testimony regarding the vehicles' relative position was vague and uncertain, and the photographs would have shown something very different if the victim's vehicle was moved either a little farther away or forward a little. Furthermore, the photographic reenactments depict all critical facts as they would be contended for by the defense, and we have rejected trial by reenactments, especially where, as here, the party seeking to use a reenactment does not show that the oral testimony would be inadequate to explain the fairly simple events depicted in the reenactments. *Pickren v. State*, supra at 456 (2); *Eiland v. State*, supra at 429-430 (1).

"Because the trial court correctly determined that an adequate foundation for admission of the [photographic reenactments] had not been established, there exists no ground for reversal." *Cornell v. State*, 265 Ga. 904, 905 (2) (463 SE2d 702) (1995).

5. Appellant urges that the trial court erred in admitting the opinion testimony of Agent Catherine Sapp regarding the position of the shooter and blood spatter patterns, over trial counsel's objection that the opinion was not disclosed as required by OCGA § 17-16-6 either during discovery or at the first trial.

Excluding evidence pursuant to OCGA § 17-16-6 "is a particularly ' "harsh sanction and should be imposed only where there is a showing of prejudice to the defense and bad faith by the State." (Cits.)' [Cit.]" *Higuera-Hernandez v. State*, 289 Ga. 553, 557-558 (3) (714 SE2d 236) (2011). Although Appellant argues that he was surprised and deprived of the opportunity to obtain an expert to rebut Agent Sapp's opinion, he has not alleged bad faith on the part of the State. Furthermore, the trial court properly found that Agent Sapp's testimony was not at variance with her testimony at Appellant's first trial, though it was couched in different terms. Moreover, " '[i]t is usually a sufficient remedy for the defense to be afforded an opportunity to interview the witness. (Cit.)' [Cit.]" *Norris v. State*, 289 Ga. 154, 156 (2) (709 SE2d 792) (2011). In this case, the trial court allowed the defense to interview Agent Sapp off the record before she took the stand and to introduce the transcript of her prior testimony. After that interview, defense counsel neither renewed his motion to exclude Agent Sapp's testimony nor requested either a continuance to obtain an expert for purposes of rebuttal or any other relief. See *Norris v. State*, supra at 157 (2). Under all of the circumstances, we conclude that the trial court did not abuse its broad discretion under OCGA § 17-16-6 in fashioning an appropriate remedy and in "refusing the harsh remedy of evidence exclusion for the untimeliness of discovery. [Cit.]" *Higuera-Hernandez v. State*, supra at 559 (3).

6. Appellant claims that a new trial is required because of newly discovered evidence in the form of testimony by Joy Bradham which was not available to defense counsel before trial and would have changed the outcome of this case. At the motion for new trial hearing, Ms. Bradham testified that Appellant's co-indictee Raymond Trey Sapp confessed to her on more than one occasion that he shot the victim to protect Appellant from the victim pulling a gun.

We have held that a new trial may be granted based on newly-discovered evidence only where the defendant shows each of the following: "(1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the

want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness." [Cit.] "Failure to show *one* requirement is sufficient to deny a motion for a new trial." [Cit.] (Emphasis in original.)

*Davis v. State*, 283 Ga. 438, 440 (2) (660 SE2d 354) (2008). Appellant has failed to meet at least the third and sixth requirements. Ms. Bradham's testimony "regarding [Sapp's] post-trial statement is merely impeaching of [his] testimony and does not establish as fact that [it] was knowingly and wilfully false." *Norwood v. State*, 273 Ga. 352 (2) (541 SE2d 373) (2001). Moreover, Ms. Bradham's testimony was not so material that it would probably produce a different verdict, as Sapp's statement still would have placed Appellant at the scene of the crime, attempting to complete a purchase of cocaine, "making him equally guilty of felony murder." *Glenn v. State*, 255 Ga. 533, 536 (4) (340 SE2d 609) (1986).

7. Appellant further contends that his trial counsel rendered ineffective assistance in three respects. To prevail on this contention pursuant to *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), Appellant " 'must show that his trial counsel provided deficient performance and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. [Cit.] " *Payne v. State*, 289 Ga. 691, 695-696 (3) (715 SE2d 104) (2011). On appellate review, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. [Cits.]" *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

(a) Appellant complains that defense counsel failed to object to the trial court's exclusion of a 20-year-old conviction of a witness for the State without conducting the balancing test required by OCGA § 24-9-84.1 (a) (1). At the hearing on the motion for new trial, counsel explained that he did not believe that it was a sufficient issue to pursue or that there was any substantial likelihood that the conviction would be admitted. "The decision whether to impeach a witness through introduction of certified copies of prior convictions is a matter of trial strategy. [Cits.]" *Lewis v. State*, 302 Ga. App. 506, 508 (a) (691 SE2d 336) (2010). Furthermore, Appellant has made no

showing that the prior conviction would have been admitted notwithstanding the stringent limitations in OCGA § 24-9-84.1 (b) on the use of a conviction more than ten years old. Moreover, the witness, who is Sapp's father, did not give any testimony which clearly assigned blame or affected the underlying felony, and, even if his prior conviction had been admitted and the jury had disregarded his testimony, the remaining evidence was more than sufficient to authorize the jury's verdict. Therefore, the value to the defense of the 20-year-old conviction's admission would have been minimal at best, and Appellant has failed to establish a reasonable probability that the outcome of his trial would have been different. See *Lanier v. State*, 288 Ga. 109, 112 (3) (b) (702 SE2d 141) (2010).

(b) Appellant claims that his attorney at trial was ineffective in asking Sapp's father if he told Appellant to get his story straight and hide the gun. Trial counsel testified that he was using the testimony of Sapp's father to shift responsibility to Sapp. Indeed, this evidence could be understood as an attempt to protect Sapp. "Decisions about what questions to ask on cross-examination are quintessential trial strategy, [cit.] . . . ." *Payne v. State*, supra at 697 (3) (b). "The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel. [Cit.]" *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003). Moreover, counsel's examination of Sapp's father was cumulative of prior testimony elicited by the prosecutor that Sapp's father told Appellant and Sapp to get their stories straight and to get rid of the gun. Thus, there could not have been a reasonable probability that the outcome of the trial would have been different. See *Bridges v. State*, 286 Ga. 535, 541 (7) (690 SE2d 136) (2010).

(c) Appellant also claims that his trial counsel was ineffective in stipulating to negative scientific test results with regard to the intoxication of the victim and not requiring the State to produce the persons who conducted the lab tests which were used at trial, even though the Confrontation Clause requires that such persons be present to testify because lab reports are testimonial in nature. Counsel testified that the test results were not an issue and were not "where the fight was." In short, the test results were not inconsistent with Appellant's defense. See *Wilcox v. State*, 309 Ga. App. 538, 540 (2) (a) (711 SE2d 67) (2011). "Entering into a stipulation is a valid trial strategy ([cits.]). . . ." *Pruitt v. State*, 282 Ga. 30, 35 (4) (e) (644 SE2d 837) (2007). Moreover, Appellant has not shown how the stipulation adversely affected the outcome of the trial.

*Judgments affirmed in part and vacated in part. All the Justices concur, except Hunstein, P. J., who concurs specially.*

HUNSTEIN, Presiding Justice, concurring specially.

I concur in the result reached by the majority. I write separately only to note my growing concern about our treatment of the issue raised in Division 2, regarding the trial court's refusal to give a jury instruction on the "inherent dangerousness" of the offense underlying the felony murder conviction. Justice Nahmias has previously written at length regarding his concerns on this issue, see *Shivers v. State*, 286 Ga. 422, 425 (688 SE2d 622) (2010) (Nahmias, J., concurring specially), and, as the issue seems to be arising with increasing frequency, I have come to agree that our approach to the issue has veered off course. See id. at 428-431 (3) (Nahmias, J., concurring specially) (arguing that adherence to *Ford v. State*, 262 Ga. 602 (1) (423 SE2d 255) (1992) requires jury, not trial court, to decide question of predicate felony's inherent dangerousness, which requires court to properly instruct jury on this issue).

As also noted by Justice Nahmias, if this Court determines that a given class of offenses is dangerous as a matter of law, then the issue of inherent dangerousness need not be submitted to the jury and no jury instructions in that regard are necessary. See *Shivers*, supra, 286 Ga. at 429-430 (3) (Nahmias, J., concurring specially). I believe that drug-related felonies like the one involved here constitute a class of offenses that are dangerous per se. This approach not only offers administrative simplicity but comports with reality and common sense. We have previously remarked on the tendency of those transacting in drugs to carry weapons. See, e.g., *Davis v. State*, 290 Ga. 757, 760 (4) (725 SE2d 280) (2012) (carrying weapons "not unusual in the drug trade"); *State v. Jackson*, 287 Ga. 646, 652 (2) (697 SE2d 757) (2010) (being armed "not unusual among drug dealers"). See also *Brint v. State*, 306 Ga. App. 10, 12 (1) (701 SE2d 507) (2010) (" '[f]irearms are tools of the drug trade' ").[1] I can think of no principled rationale for purporting to require the jury to make an express finding of dangerousness in every felony drug transaction, when it is obvious that such transactions are dangerous by their very nature. Doing so only creates a potential avenue for attacking an otherwise sound verdict without providing any meaningful additional protection of the defendant's rights.

---

[1] Though this Court has declined to hold that "every delivery or distribution of a controlled substance that results in death can support a felony murder conviction," *Hulme v. State*, 273 Ga. 676, 679 (1) (544 SE2d 138) (2001), this position, in my view, should be limited to those cases in which the death was caused by the victim's ingestion of the drugs administered rather than by violence attendant to an illicit drug transaction. See, e.g., *Chua v. State*, 289 Ga. 220, 230 (1) (b), n. 8 (710 SE2d 540) (2011) (felony murder predicated on physician's prescription of methadone to patient who died as a result); *Hulme*, 273 Ga. at 679 (1) (felony murder predicated on distribution of prescription medication, resulting in overdose that caused victim's death).

*Katherine M. Mason*, for appellant.

*R. Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.